GLADNEY, Judge.
This suit was filed on July 29, 1953, for recovery of workmen’s compensation alleged to have accrued by reason of the contraction by plaintiff of an occupational disease known as blastomycosis. Defendant first opposed the demand through: (1) An exception of no cause or right of action, contending the onset of the disease occurred prior to the effective date, July 30, 1952, of Act No. 532 of 1952, which amended LSA-R.S’. 23:1031.1 and created the right on which the instant suit is founded; (2) *622 A plea of prescription of one year under LSA-R.S. 23:1209 which prescribes the limitation from “the expiration of one year from the time the injury develops”; and (3) A plea in bar based on Section C of LSA-R.S. 23:1031.1 declaring that a claim arising from an occupational disease shall be forever barred unless the employee shall file the claim within four months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself. After separate consideration from the merits the trial court rendered judgment rejecting the above defenses. At the close of the trial, however, the same pleas were again urged, and are insisted upon before this court. The trial largely involved presentation of medical testimony to show whether or not blas-tomycosis is or is not an occupational disease. The demands of plaintiff were rejected by the district court and from the judgment so rendered, he has appealed.
There is but little, if any, conflict as to the essential facts involved. By stipulation it was agreed plaintiff suffers from a form of dermatosis known as blastomycosis. Plaintiff commenced his employment on September 1, 1951, as a laborer in the pulp department of defendant’s paper mill located in Bastrop, and he continued without noteworthy variation performing the same duties until August 15, 1952, when because of the inroads of the disease he was unable to any longer perform his work.
The employee’s duties required him to assist in the preparation of pulp processed from wood. In preparing pulp, which is a combination of water, various chemicals, and chips of wood, petitioner was more or less constantly in contact with chemicals and water. Frequently his entire body and clothing were wet because of the presence of the liquids, and he continually worked in a room which was wet and damp at all times. About April 1, 1952, ulcers and sores began to appear on his body. He then consulted several doctors to ascertain the cause of his trouble and received treatments, which, however, failed to alleviate his condition. In August of 1952 he was forced to discontinue his employment and his condition has progressively grown worse. Finally when his bones and lungs became affected he reported to the Veterans Hospital in Shreveport on January 12, 1953, where he was hospitalized until April 29, 1953, and at the time of trial he was still receiving out-patient treatments from that institution.
Plaintiff testified he did not know or realize that blastomycosis was a compen-sable claim under the Workmen’s Compensation Act until he was so informed by his attorney following a professional visit by plaintiff to Dr. D. L. Anderson of Monroe, who made a diagnosis of blastomycosis on July 13, 1953, and expressed an opinion that the cause of the disease had a definite relation to his employment. Confronted with this testimony the defendant filed in evidence a statement of claim to the Metropolitan Life Insurance Company which was filled out by plaintiff March 7, 1952, and in which he wrote the cause of his disability as blastomycosis. This information was obtained from the reverse of the form wherein a doctor in the Veterans Administration Hospital in Shreveport gave blastomycosis as the cause of plaintiff’s disability. Plaintiff insists, however, at that time he was not aware of any relationship between the disease and his employment.
The exception of no cause or right of action rests upon the assumption by counsel for appellee that the 1952 amendment to the Workmen’s Compensation Act, LSA-R.S. 23:1031.1 went into effect on July 30, 1952, and that the disease blastomycosis had manifested itself prior to that time and at a time when the Workmen’s Compensation Act did not afford a remedy for such a disease. Counsel’s position is not well taken as Frisby steadily continued in his employment until August 15, 1952. In Mottet v. Libbey-Owens-Ford Glass Company, 1952, 220 La. 653, 57 So.2d 218-219, our Supreme Court held under the facts therein shown the injury “did not develop into total disability until March 11, 1947, at which time the plaintiff could no longer pursue his trade as a glass cutter.” Mottet was a glass cutter and although his condition had *623 caused disability for some time prior to March 11, 1947, he continued to work on until he was forced to quit on March 11, 1947. The court of appeal had sustained a plea of prescription of one year predicated on LSA-R.S. 23:1209 which statute states: “Where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops”. Mottet knew of his disability on January 27, 1946, but the Supreme Court took the position that his injury did not develop until total disability required him to cease employment. And so it is in the instant case. Frisby’s total disability did not cause him to cease work until August 15, 1952.
Therefore, the plaintiff’s claim under the Workmen’s Compensation Act did not accrue until approximately fifteen days after Act 'No. 532 of 1952 became effective, and since this act expressly provides that dermatosis, which embraces blastomycosis, may be considered among the occupational diseases therein listed, plaintiff clearly has a cause or right of action if he can show that the form of blastomycosis from which he is suffering was contracted from his employment. There was no error in the ruling of the trial court.
The ruling of the Mottet case has application also to plaintiff’s plea of prescription of one year. This action was instituted on July 29, 1953. Therefore, since it appears that plaintiff must be considered totally disabled only as of August 15, 1952, his suit was timely filed within one year and the plea of prescription of one year was properly overruled.
The plea in bar, as so styled by counsel for defendant, is founded upon subsection C of the 1952 amendment to LSA-R.S. 23:1031.1, which provides:
“All claims for disablement arising from an occupational disease are forever barred unless the employee files a claim with his employer within four [4] months of the date of his contraction of the disease, or within four [4] months of the date that the disease first manifested itself. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.”
It is apparent that a judicial determination of this issue involves a proper interpretation of the clause reading “the date that the disease first manifested itself.” During the trial of the case counsel for plaintiff, a reputable and eminent member of the legal profession, testified that during July of 1953 plaintiff visited his office and discussed with him the possibility of prosecuting a claim against the Metropolitan Life Insurance Company for certain benefits he might possibly be entitled to, and Frisby was advised by him that if he was entitled to workmen’s compensation he would not have any claim under the policy with the Metropolitan Life Insurance Company. Following this up he secured an appointment for plaintiff with Dr. D. L. Anderson of the Chest and Allergy Clinic in Monroe, which appointment was had some time during the month of July, 1953. As a result of this professional visit Dr. Anderson advised Frisby he was suffering from blastomycosis and that there was a connection between his employment and his disease.
Our Workmen’s Compensation Act directs the courts to give a liberal interpretation to its provisions. The Supreme Court unquestionably followed this injunction of the Legislature in the Mottet case wherein it held the injury did not develop until plaintiff was forced to cease employment through total disability. Manifestly, knowledge of the diagnosis but without knowledge or reasonable information that his disease was related to his employment and within the purview of the Workmen’s Compensation Act could not enable plaintiff to avail himself of the rights granted under the Act. We are thus of the opinion that the claim had not “manifested itself” within the Act until July of 1953, when he first became aware the disease was related to his employment. We therefore resolve, that insofar as the Workmen’s Compensation Act has application, the bias- *624 tomycosis from which plaintiff was suffering did not manifest itself within the provisions of LSA-R.S. 23:1031.1, subd. C until July of 1953, when Frisby was informed of the connection between his disease and his employment. The plea in bar or plea of peremption was, therefore, properly disposed of by the district court.
Under the amendment, LSA-R.S. 23 :- 1031.1 authorizing recovery of workmen’s compensation in case of certain occupational diseases where plaintiff has not been employed for a longer period than twelve months while performing work for a particular employer, the statute provides it shall be presumed that a disease is nonoccupational and was not contracted in the course of or arising out of such employment, unless the employee can prove the disease was contracted during the course of the twelve months period “by an overwhelming preponderance of evidence.” Frisby testified that he commenced his employment with the International Paper Company on September 1, 1951, and that he performed his last work for said company on August 15, 1952. It is, therefore, clear that the above referred to section of the statute is pertinent, and in order to justify an award of compensation herein the court must be convinced by cm overwhelming preponderance of the evidence that the blastomycosis which has totally disabled the employee was contracted in the course of employment. We have experienced no difficulty in finding plaintiff has not met the burden of proof required.
Medical testimony was presented by five doctors.
Dr. D. L. Anderson of Monroe, the head of the Chest and Allergy Clinic at Monroe, testified from his experience in diagnosing and treating the disease, and quoted extensively from the book of Dr. Louis Schwartz entitled "Occupational Diseases of the Skin”. Dr. Anderson expressed the opinion that the work which Mr. Frisby performed in the wet room where he was' subjected to damp and humid conditions at all times, definitely could cause or aggravate the blastomycosis to such an extent that it became disabling. Referring to the work of Dr. Schwartz Dr. Anderson testified that blastomycosis occurs in four main-occupational groups: farming, horticulture, furs and animal hides, and wood work. He thought plaintiff’s case fell within the last classification inasmuch as he was constantly handling damp wood pulp. Dr. A. Scott Hamilton, an orthopedic specialist of extremely high repute, testified that during his military service he became acquainted with a number of cases of blastomycosis; and that he believed very definitely that the conditions under which Mr. Frisby worked were a contributing factor in the cause of his infection.
Dr. F. E. Polen, a dermatologist in Monroe, Dr. John Seabury, an associate professor of medicine at Louisiana State University medical school, specializing in infectious diseases, and Dr. William V. Gar-nier, who has been engaged for many years, in the treatment of industrial cases in Bas-trop, Louisiana, arising from the two paper mills situated there, all without exception, testified blastomycosis can not be classified' as an occupational disease, and further that very little is scientifically known of its. source and development, though it is generally believed the disease has its origin in-nature. During the course of the examination of Dr. Polen he stated that he had’ made a study o-f some fifty-eight recorded’ cases of cutaneous blastomycosis as reported at the Charity Hospital in New Orleans-between 1939 and 1949. He stated: “Now of the original fifty-eight cases, eight were-of domestic origin, that is housewives, eight were farmers, twenty-two were day laborers, nine were lumbermen, six ’were miscellaneous, and five were not determined. Since 1949 to 1953 there have been nine other cases collected, three were systemic and six were cutaneous. The origin of their infection has not been determined.” He testified further that on one occasion-the disease occurred in a three-year old' colored baby which he thought was contracted from the nurse or mother who was-taking care of the child. The testimony of Dr. John Seabury discloses that very little is known about the method of contract *625 ing the disease except that it is more common in males than in females and that the persons who have it are in the lower economic groups and are engaged in labor out of doors. He pointed out that this tendency does not seem to prevail in the case of plaintiff. He said that science does not know where blastomycosis starts or where blastomyces lives, although they suspect that it is in the soil. He said scientists have not been able to determine whether dampness dr dryness is of any import. He was of the positive opinion that the disease cannot be called an industrial disease. Dr. W. V. Gamier testified that he had not seen or heard of any case of blastomycosis from the paper mill workers. This testimony is consistent with that of Drs. Anderson and Polen who also stated that they knew of no other cases arising where the disease has been contracted by a person employed as a paper mill worker.
As we review the medical testimony, the expert witnesses who testified favorably to plaintiff were of the opinion that the disease could have its origin in the kind of work plaintiff was performing because it was wood work or work involving wood pulp, and that since the disease is a fungus disease dampness and environment could be contributing factors to its aggravation. These experts were careful not to express their opinion plaintiff’s disease was contracted from his work. On the other hand those doctors who testified on behalf of defendant were of the positive opinion that blastomycosis, so far as knowledge of the disease presently exists, cannot be considered as an occupational disease or even one that would be aggravated by constant working in a damp and wet environment.
We are, therefore, compelled to the conclusion that plaintiff has not established by the weight of evidence required by the statute that there is causal connection between his employment and the disease which has totally disabled him.
For the foregoing reasons the judgment from which appealed is affirmed. This being a pauper case, no costs are attached against the appellant.