152 So.2d 114 (1963)
Mitchell BERNARD, Plaintiff-Appellee,
v.
LOUISIANA WILD LIFE AND FISHERIES COMMISSION and Houston Fire & Casualty Company, Defendants-Appellants.
No. 811.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1963.
Rehearing Denied May 1, 1963.
Certiorari Refused June 14, 1963.
*115 Stafford & Pitts by Grove Stafford, Jr., Alexandria, for defendants-appellants.
Roy & Roy by Chris J. Roy, Marksville, for plaintiff-appellee.
Before TATE, FRUGE and HOOD, Judges.
FRUGE, Judge.
Plaintiff instituted this suit for workmen's compensation benefits against his employer, Louisiana Wild Life and Fisheries Commission, and his employer's insurer, Houston Fire & Casualty Company. He claims total and permanent disability as a result of contracting chemical pneumonitis from a chemical spray, 2-4-D, which he used in his work. From a judgment in the lower court awarding plaintiff maximum benefits for a period not exceeding 400 weeks, defendants have appealed. By answer to this appeal plaintiff asks that the judgment of the lower court be amended so as to include penalties and attorney fees, and further that we increase the expert witnesses' fees.
*116 Defendants, during the course of the trial in the lower court, filed a plea of prescription based on Section D of LSA-R.S. 23:1031.1. The trial judge rejected this defense and the defendants again raise this issue on appeal.
The gist of defendants' argument is that plaintiff first suffered pneumonitis in December of 1958; that his family doctor informed him that this pneumonitis had been caused by the chemical spray 2-4-D; that he again suffered an attack of pneumonitis in July of 1960, his doctor attributing his illness to the same cause; that it was not until he suffered a third attack on March 1, 1961 that he filed a claim with his employer; that under these circumstances plaintiff's claim for compensation had prescribed.
Pertinent to the issue of prescription, LSA-R.S. 23:1031.1, Section D provides:
"All claims for disablement arising from an occupational disease are forever barred unless the employee files a claim with his employer within four months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein."
The question of prescription of an occupational disease was considered by our learned brethren in the Second Circuit, Court of Appeal on two occasions. Ludlam v. International Paper Company, La.App., 139 So.2d 67; Frisby v. International Paper Company, La.App., 76 So.2d 621. The rule of law enunciated by both of these decisions is succinctly set forth in the Ludlam case, supra, 139 So.2d at page 70, as follows:
"Therefore, an occupational disease does not `manifest itself' within the purview of LSA-R.S. 23:1031.1(D) until the employee has knowledge of the connection between his disease and his employment. It follows the prescriptive period in the instant case commenced only from the date plaintiff became aware of the causality between his employment and his disease. * * *"
Defendants urge, and the record bears this out, that plaintiff had knowledge of his disease and its causal connection with his employment in 1958, but that suit was not filed until 1961. Therefore, they submit that under the holding of the Ludlam case, supra, plaintiff's claim has prescribed.
While it is true that plaintiff had knowledge of the nature and cause of his illness some two years prior to the claim sued upon, we are of the opinion that the plea of prescription was properly rejected. In reaching this conclusion, we deem the following factors most pertinent: First, when plaintiff first contracted pneumonitis in December of 1958 he not only informed his employer of the nature of his illness and its causal connection with his employment, but, additionally, he received compensation payments from his employer's insurer, the defendant herein. (Tr. 393Employer's First Report of Injury) Second, although plaintiff did not file this present suit until August 22, 1961, whereas he terminated his employment on March 1, 1961, he notified his employer of the nature and extent of his illness on April 17, 1961. (Tr. 215). Third, plaintiff's illness did not result in permanent and total disability, if in fact he is totally and permanently disabled, until March 1, 1961.
In construing Section D of LSA-R.S. 23:1031.1, we feel that a proper analogy can be drawn between the case at bar and the Supreme Court decision of Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218. Therein, the court, when confronted with a plea of prescription in a latent injury case (See LSA-R.S. 23:1209), held that where an employee receives an injury from an accident that later develops into disability, prescription does not commence to run until he is disabled. In commenting on when an employee is disabled for the purposes of prescription, the *117 court held that he was not disabled until he abandoned his work because of suffering. Thus applying the rationale of the Mottet case, supra, to the facts of the instant case, plaintiff was not disabled within the meaning of the act until he was forced to terminate his employment on March 1, 1961.
Similarly, in Fontenot v. Great American Indemnity Co., La.App., 127 So.2d 822, this court held that disability did not exist until after the employee had finally left his employment notwithstanding that prior to his permanent and total disability he had been obliged to stop working at various intervals for treatment or even to recover sufficiently to make further efforts at his job possible.
In our opinion the rationale of the Mottet and Fontenot cases, supra, should be adopted in construing the meaning of Section D of LSA-R.S. 23:1031.1. Thus, in the case at bar, plaintiff was not disabled within the meaning of Section 1031.1(D) until he terminated his employment on March 1, 1961. Since he notified his employer of his disability on April 17, 1961, it necessarily follows that the four month prescriptive period had not lapsed.
Having concluded that plaintiff's claim for compensation has not prescribed, we now turn to the merits of his claim. Plaintiff is employed by the Louisiana Wild Life & Fisheries Commission as a Hyacinth Control Worker II. Prior to his alleged disability he had worked for this same employer for some eight years. He was in a supervisory position over several other employees, all of whom were engaged in spraying water hyacinths with a chemical called 2-4-D (Dichlorophenoxyacetic Acid). Plaintiff claims that pursuant to his duties he contracted chemical pneumonitis, and that he is totally and permanently disabled thereby. He further alleges that the cause of this disease was the inhalation of 2-4-D.
Thus, the remaining issues to be determined by this court are: First, the extent of plaintiff's disability; and, second, whether his disability was caused by his working with the chemical spray, 2-4-D.
Concerning the question of whether plaintiff is permanently and totally disabled, we note the following evidence adduced at the trial of this case:
Dr. Abramson, plaintiff's family physician, was the only doctor who examined and treated plaintiff for all of his attacks. He diagnosed plaintiff's illness of December 8, 1958 as pneumonitis, his findings being confirmed by X-rays which established that plaintiff had rales throughout his lungs. (Tr. 547) Based on plaintiff's history he worked extensively with the chemical spray, 2-4-D, it was Dr. Abramson's opinion that plaintiff was suffering from chemical pneumonitis; said chemical pneumonitis being caused by the 2-4-D. Dr. Abramson again examined and treated plaintiff for his illness of August 1, 1950. His findings were identical to his diagnosis of December, 1958. Similarly, Dr. Abramson examined plaintiff after his attack of March 1, 1961, again finding that plaintiff was suffering from chemical pneumonitis. It is important to note that at this time Dr. Abramson found marked fibrosis present in plaintiff's lungs. Dr. Abramson's testimony is lengthy, exhaustive and goes into great detail concerning plaintiff's condition. In summary, his findings as to plaintiff's present fitness are as follows: Plaintiff had three attacks of chemical pneumonitis. In Doctor Abramson's opinion these attacks were brought about by the use of the chemical 2-4-D. As a result of these attacks, plaintiff has developed emphysema, which is an over expansion of the lungs, causing plaintiff to exhibit shortness of breath and disabling him from undertaking any form of moderate exertion.
Dr. Abramson's findings were on the whole substantiated by Dr. Morton Ziskind, a lung specialist. Dr. Ziskind examined plaintiff after his third and final attack of March 1, 1961. In addition to Dr. Abramson's reports and findings, he had the benefit of plaintiff's X-rays. It is also noteworthy *118 that he had available, for the purpose of diagnosis, the pulmonary report of Dr. Seabury. Dr. Seabury's examination of plaintiff will be discussed subsequently. His final analysis of plaintiff's condition was that he was disabled from doing work requiring any strenuous activity.
Dr. John Seabury, a pulmonary function expert, ran a pulmonary function test on plaintiff about eight months after his last attack. His findings were that plaintiff's lung function tests were normal for a man his age. While we have no reason to question the validity of these tests, it is noteworthy that Dr. Seabury testified that lung function tests may vary a great deal from day to day. This perhaps suggests the reason why Dr. Ziskind, who had the benefit of Dr. Seabury's tests, did not feel that his findings contradicted the findings of Dr. Seabury.
Dr. Rufus Craig, an internal medicine specialist, examined plaintiff on May 1, 1961 and March 21, 1962. He had occasion to examine the X-rays of plaintiff and found evidence of pneumonitis and emphysema.
Dr. Mitchell R. Zavon, a specialist in industrial medicine, testified by written interrogatories. His only contact with the plaintiff was an examination of his X-rays. Succinctly his findings were that plaintiff was not disabled. Concerning the possibility of contracting chemical pneumonitis from 2-4-D, he stated that he knew of no such cases.
Dr. Alexander, an expert in the field of radiology, did not examine plaintiff but did examine plaintiff's X-rays. He found that emphysema had developed in the left lung base with resulting loss of lung motion.
The trial judge who heard all of the testimony and viewed all of the evidence adduced at the trial of this case found that plaintiff had proved disability by a preponderance of the evidence. Considering all of the expert testimony as a whole, we cannot say that he was manifestly wrong. In reaching this conclusion, we are mindful of the fact that all of the medical testimony is not in accord. However, in view of the positive testimony of plaintiff's treating physician, Dr. Abramson, and taking into consideration the extent and nature of the examinations made by the other doctors who testified in this case, we are of the opinion that plaintiff has proven his disability by a preponderance of the evidence. See Morris v. Supreme Bedding & Furniture Mfg. Co., La.App., 126 So.2d 412.
The next issue which we need consider concerns the causal connection between plaintiff's illness and his use of the chemical spray, 2-4-D. The expert evidence on this question establishes that the toxic effects of this chemical are unknown for the most part. Mr. Cassius Clay, a chemist, testified that the ingredients that made up this chemical were toxic and irritants. Dr. Zavon testified that he knew of no cases of chemical pneumonitis caused by the inhalation of this chemical spray. It would serve no purpose to review in great detail all of the testimony concerning the effect of this chemical on human beings, since for the most part the expert opinion was based on studying the literature that had been published concerning 2-4-D.
The established jurisprudence of this State is to the effect that in a compensation case, as in other cases, plaintiff bears the burden of proof, and he is required to establish his claim with reasonable certainty by a preponderance of the evidence. Caldwell v. Caldwell, La.App., 55 So.2d 258; Rowan v. Travelers Ins. Co., La.App., 111 So.2d 387. However, a claimant does not have to prove causal connection to an absolute certainty; it is sufficient that he establish the cause of his injuries by a reasonable probability. Ellzey v. Fidelity & Casualty Co. of New York, La.App., 123 So.2d 593.
In the instant case there is little or no doubt that plaintiff has contracted chemical *119 pneumonitis. He is at the present time a relatively young man, 47 years of age. He was healthy when he commenced his employment for the Louisiana Wild Life and Fisheries Commission and now he is totally and permanently disabled. The evidence adduced at the trial of this case discloses no exposure by plaintiff to any other chemical compound that could have caused his present illness. He has worked with the 2-4-D chemical for a considerable period of time. While it cannot be said that he has ruled out all other possibilities which might have caused his illness, we are of the opinion that the only reasonable hypothesis is that the chemical pneumonitis was caused by the 2-4-D chemical spray which he worked with in connection with his employment.
The trial judge decreed that the fees of the experts who testified in this case, by deposition or otherwise, be fixed at $50.00 each, plus travel expenses at the rate of 10 cents per mile. Plaintiff, by way of answer to defendants' appeal, asks this court to increase this award. In this regard, it is urged that these fees are inadequate and not in accordance with the jurisprudence inasmuch as certain specialists and experts are to be paid more than the average witness.
As a general rule the determination of expert witness' fees is largely with the discretion of the trial court. Coine v. Smith, La.App., 100 So.2d 902. In the instant case we are of the opinion that an award of $50.00 for each expert who testified is neither excessive nor inadequate; nor do we feel that the trial judge abused his discretion. Accordingly, we will not disturb this award.
The last issue which we need decide is the question of penalties and attorney fees. Considering the conflicting testimony as to the extent and cause of plaintiff's illness, we are of the opinion that defendants were not unreasonable or arbitrary in refusing compensation payments.
For the reasons assigned herein, the judgment of the lower court is affirmed; defendants to pay all costs of this appeal.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.