310 So.2d 675 (1975)
James BURNS
v.
W. H. PATTERSON CONSTRUCTION COMPANY et al.
No. 10189.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
*676 Lloyd P. Champagne, Baton Rouge, for plaintiff-appellant.
John I. Moore, Baton Rouge, for defendants-appellees.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
The plaintiff, James Burns, seeks recovery of workmen's compensation benefits. He alleges total and permanent disability resulting from alleged injuries sustained in the course of his employment as a road construction laborer. Specifically he alleged that for many years he was "exposed to clouds and fumes of lime and cement and other dusts" and that "repeated exposures * * * constituted repeated and recurrent accidents, injuries trauma and insult to the lungs * * *." He further alleged that: the "* * * recurrent accidental injuries have resulted in inflammation, fibrosis, and emphysema, culminating in forcible disability and incapacity * * * on or about May 10, 1972." This suit was filed May 10, 1973.
The trial judge, in written reasons for judgment said:
"The court is in doubt as to whether the exposure was a cause-in-fact of plaintiff's disability. * * * Nevertheless, the Court is not faced with the problem of resolving these issues since Mr. Burns' claim has prescribed."
This was based on a finding of fact that plaintiff quit work on May 4, 1972 when he was no longer able to perform the duties of his employment. Accordingly judgment was rendered in favor of defendants rejecting plaintiff's demands. The plaintiff has appealed.
Dr. Montrol Cummings, plaintiff's treating physician and witness, testified that initially he was diagnosed as having "chronic emphysema with superimposed bronchial asthma" but subsequently during the course of hospital treatment the diagnosis as described by Dr. Cummings was "essentially he had bronchial asthma with very little emphysema." Finally in August, 1973 "* * * it was confirmed that his major diagnosis was chronic asthma with acute exacerbations, * * *." The other medical expert witnesses are in substantial agreement with this diagnosis. It was never determined with certainty if the episodes of asthmatic attacks were caused by an underlying allergic basis. This would require skin tests which were not made. The medical experts made reference to asthma, emphysema, and obstructive lung disorder which significantly effected the capacity of the lungs to move air in and out. There is no serious dispute among the doctors that the exposure to cement and lime dust incident to his employment was a contributing factor and no doubt aggravated the condition, but there is no conclusive evidence that this was a primary or exclusive cause of his pulmonary problems.
The defendants deny that the plaintiff ever had an "accident" or "injury", or contracted an occupational disease within the meaning of the statute. In any event they plead prescription, asserting that this action was brought more than one year from the manifestation or alleged development of the disability.
We will address ourselves first to the issue of prescription. The applicable section is LSA-R.S. 23:1209 which provides in pertinent part:
"* * * Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Appellant concedes in his brief that "Burns was not disabled within the meaning of the Occupational Disease Statute * * *" *677 and hence the prescriptive limitation of four months as provided in LSA-R.S. 23:1031.1, subd. D does not apply.
The plaintiff suffered asthmatic attacks attended by wheezing and shortness of breath long before the termination of his employment. There were many times over a period of more than a year preceding termination of work that medical attention, and in some instances hospitalization, was necessary to enable him to return to work. He was fully aware of his condition and particularly the effect of inhalation of dust more than a year before he quit work. Awareness or knowledge of a chronic illness is not enough per se to meet the requirement of the statute in reference to manifestation of disease or development of injury. Our jurisprudence is clear that in cases such as this, where there is no accident or specific occurrence to which a cause can be attributed, but rather where there is a progression and recurrent manifestation of illness of disability from latent causes, which may be attributable in whole or part to work related incidents, the time of development of the injury for the purpose of determining a prescriptive date, is the date of termination of employment, more specifically, the date when the employee finally has to give in to his disability and quit work. Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956); Mottet v. Libby-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952); Allen v. Milk Haulers (La.App. 1st Cir. 1973) 278 So.2d 871; Kaupp v. City of New Orleans (La.App. 4th Cir. 1971) 248 So.2d 99; Bernard v. Louisiana Wild Life and Fisheries Commission (La. App. 3d Cir. 1963) 152 So.2d 114 (cert. denied).
We agree with the trial judge that the day when Burns finally gave in to his suffering and quit work was May 4, 1972, which incidentally was a Thursday. The record clearly bears this out.
The plaintiff testified in part as follows:
"* * * I went to the office when I got sick and sat down and I talked to Mr. Earl [Patterson] concerning my sickness. And I told him I was sick and wouldn't be able to work. And he asked what was my problem."
A discussion then followed about the dust and Burns' complaint that he could no longer work. An agreement was reached to send him across the river to work under conditions more favorable. He fixed the date of this conversation, saying: "around May or April, I got a bad recollection and he [Patterson] scored the calendar. * * * 1972, around May or April. Now, I disremember what month." He continued to testify about working across the river and Mr. Patterson saying he was going to send him to, (in Burns' language) "a special doctor". He was sent to Dr. James H. Lutschg. Dr. Lutschg's report, copy of which plaintiff filed in evidence, is dated April 24, 1972 and says in part: "I saw Mr. Burns on the 11th of this month * * *." From this we conclude that plaintiff's complaint to Mr. Patterson of his inability to continue work was around the first week in April, 1972.
The time sheets filed in evidence show that Burns worked on April 10 (Monday), April 12 (Wednesday) and April 13 (Thursday), ten hours each day. His failure to work on Tuesday, April 11, was no doubt due to his visit to Dr. Lutschg. Thereafter he worked a total of nine days terminating on May 4, 1972.
Under the rationale of the cases cited above we must conclude, as did the trial judge, that the date properly determined to be the date the injury developed, within the meaning of LSA-R.S. 23:1209, was May 4, 1972. Hence his claim had prescribed when this proceeding was filed on May 10, 1973.
For these reasons the judgment appealed is affirmed at appellant's cost.
Affirmed.