335 So.2d 772 (1976)
Allie Ray DOUGHARTY, Plaintiff-Appellant,
v.
CALKRAFT PAPER COMPANY, Defendant-Appellee.
No. 5509.
Court of Appeal of Louisiana, Third Circuit.
July 8, 1976.
Rehearing Denied August 18, 1976.
*773 William Henry Sanders, Jena, and Kaplan & Rivers, by Edward A. Kaplan, Alexandria, for plaintiff-appellant.
Gold, Hall, Hammill & Little, by John F. Simon, Alexandria, for defendant-appellee.
Before CULPEPPER, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
This is a suit for workmen's compensation. The trial court sustained defendant's motion for summary judgment, and plaintiff has appealed.
ISSUE: Is there a genuine issue as to a material fact?
On May 30, 1975, plaintiff, Allie Ray Dougharty, filed suit against his alleged employer, Calkraft Paper Company, seeking recovery under the Workmen's Compensation Act for total and permanent disability. Plaintiff alleged that on October 1, 1973, while acting in the course and scope of his employment as a woodworker for defendant, he stooped over causing injury to his back which resulted in his disability. *774 He alleges that the injury did not manifest itself until 1975. A peremptory exception of prescription of one and two years was incorporated in the general denial filed by the defendant. The defendant also filed a motion for summary judgment grounded on prescription and non-occurrence of a work related accident.
At the hearing on the motion, defendant offered the deposition of the plaintiff, together with an affidavit of Dr. Archie B. Osborn. The plaintiff offered his own affidavit.
The trial court rendered judgment in favor of the defendant dismissing plaintiff's suit. The trial judge did not state the authority upon which he based his judgment; however, it is obvious that he either relied upon the provision of LSA-R.S. 23:1209 and found that the suit had prescribed, or decided that the plaintiff failed to prove an accident.
The plaintiff began working for Calcasieu Paper Company, the predecessor of Calkraft Paper Company, in September of 1971. He was employed in the Wood & Land Department as a laborer and equipment operator. He operated bulldozers and tractors. He built fire lanes, roads and bridges and deadened timber (which he referred to as "T.S.I." work). To deaden the timber he would use an injector filled with poison which he injected into the tree-trunk.
In his deposition the plaintiff testified that he first felt the back pain in March of 1973 while doing T.S.I. work. He was away from work for two (2) days. In May of 1973, he again experienced the back pain and remained away from work for a period of three (3) or four (4) weeks. In October of 1973 (at the suggestion of the company doctor) he remained away from work for two (2) months. Plaintiff returned to work and did not experience any trouble until May of 1975. On this occasion, while again doing T.S.I. work, he experienced severe back pain. He consulted a Doctor Banks who performed back surgery on June 11, 1975. Plaintiff testified that he has been unable to work since May of 1975, when he left his employment.
In his affidavit, Dr. Osborn stated that he examined the plaintiff on May 14, 1973, for an acute lumbar back condition which the plaintiff said first appeared on May 12, 1973. He treated the plaintiff from May 14, to June 8, 1973, and released him to return to work on June 11, 1973. He had treated the plaintiff for the same condition from March 27 to March 29, 1973. His diagnosis was an acute and chronic back condition.
The plaintiff filed an affidavit in opposition to the motion for summary judgment wherein he states:
". . . prior to October 1, 1973, and for a period of several months prior thereto he was engaged in gainful employment for Calkraft Paper Company and able to perform the duties required by Calkraft Paper Company. Deponent further states that on or about October 1, 1973, he became disabled while employed by Calkraft Paper Company which injury eventually became manifest and for which he eventually underwent an operation on 11, June, 1975, for a bilateral decompression of the S1 nerve root and deponent is presently totally disabled to do heavy manual labor on this date."
The plaintiff argues that the injury which manifested itself in May of 1975 was precipitated by the job related incident of October 1, 1973. He contends that his suit, filed in May of 1975, was timely, having been filed within a year from the development of the injury and within two years of the accident of October 1, 1975.
LSA-R.S. 23:1209 reads as follows:
"In case of personal injury ... all claims for payment shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this *775 Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. . . . Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
The questions upon which a decision of the issue in this case depends are 1) at what point did the plaintiff's injury, if any, "develop;" 2) did the plaintiff suffer an accident within the intendment of the Workmen's Compensation Act. These are questions of fact which must be determined from the testimony in evidence.
The employer contends that there is no evidence of an event or incident which occurred that could be considered an "accident," and that if we do conclude that an accident occurred in October, 1973, then, the one year prescription would serve to bar the claim of plaintiff. It contends that the fact that the plaintiff was unable to pursue his duties of employment from October, 1973, until the end of December, 1973, clearly demonstrates that his disability had developed and was manifest then, and that thus, more than one year elapsed from the date of the accident until May 30, 1975, the date the suit was filed. These arguments are without merit.
The Workmen's Compensation Act provides that the prescription or peremption should not commence until the injury has developed. An employee who receives an injury flowing from an accident that later develops into disability is excepted from the general rule, and his right of action is not perempted until one year after the injury has developed.
The jurisprudence supports the rule that workmen's compensation benefits are payable when an occupational accident aggravates a pre-existing condition and produces injury. LSA-R.S. 23:1031, Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1975). When the ligaments, cartilages, or organs of the body give way because of exertion on the job, the injury is compensable. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969).
Even though the evidence does not establish which of several occupational incidents finally causes the disability of a worker, he may recover if the evidence establishes that one or more of the incidents aggravates the condition to the extent of causing disability. Chism v. Kaiser Aluminum & Chemical Corporation, La., 332 So.2d 784, 1976.
In a case factually similar to the case now before us the court stated:
"The plaintiff suffered asthmatic attacks attended by wheezing and shortness of breath long before the termination of his employment. There were many times over a period of more than a year preceding termination of work that medical attention, and in some instances hospitalization, was necessary to enable him to return to work. He was fully aware of his condition and particularly the effect of inhalation of dust more than a year before he quit work. Awareness or knowledge of a chronic illness is not enough per se to meet the requirement of the statute in reference to manifestation of disease or development of injury. Our jurisprudence is clear that in cases such as this, where there is no accident or specific occurrence to which a cause can be attributed, but rather where there is a progression and recurrent manifestation of illness or (sic) disability from latent causes, which may be attributable in whole or part to work related incidents, the time of development of the injury for the purpose of determining a prescriptive date, is the date of termination of employment, more specifically, *776 the date when the employee finally has to give in to his disability and quit work." (Citations omitted.) Burns v. W. H. Patterson Construction Company, 310 So.2d 675 (La.App. 1st Cir. 1975).
We are of the opinion that the affidavits offered in support of the motion for summary judgment and the testimony of the plaintiff, by deposition, establish that there is a substantial issue as to several material facts, namely: 1) did the plaintiff become disabled as a result of one or more occupational incidents; 2) when did the injury develop for the purpose of determining a prescriptive date; 3) was suit filed more than two years from the date of the accident, and within one year of the development of disability.
The plaintiff, in his deposition, testified as follows:
"Q Well then in other words after a couple of days of doing T.S.I. work you would have this pain as long as you did the T.S.I. workis that correct?
A Yes, sir, and I had to be off of that for two or three days before the pain subsided.
Q And then the pain would subside and you could do any of the other kind of work after thatis that right?
A Yes, sir.
Q Was there any particular incident that happened in April or May of this year that while you were doing the T.S.I. work that particularly caused this to occur, or did it just come on as you were working?
A It came on as I was working according to my doctor, the position of my body.
Q Because of the position that your body had to be in while you were doing the work?
A Yes, sir.
Q Do you know what position that was?
A Yes, sir, I was bending over and jabbing the timber to my left, and it caused a pressure to the back.
Q What doctor is it that told you that?
A Dr. Banks.
Q And he said that your having to constantly bend over and jab the thing into the tree was causing a pressure?
A It was causing aI don't know how to explain this, but a continual bumping on my backbone.
Q So that after a while enough of that would make it hurt. Is that right?
A Right, yes, sir.

(Tr. p. 45-46)
Q When you went back to work then in December did you have the same problem again, or did you not?
A No, sir, not until this past May, somewhere along in thereI believe I went a year and five months without any problem.
Q Mr. Dougharty, you say that from the day you went back in December, 1973 until May of 1975 you didn't have any trouble with your back at all.
A Right.
Q Well did you do T.S.I. work during that time?
A Yes, sir, periodically.
Q And then in May of '75 now was there anythingI think you've already told me there was no specific thing that happened, it just flared up againis that right?
A Yes, sir.

*777 Q Do you know for sure that this was while you were doing T.S.I. work in May?
A I know for sure while I was doing T.S.I. work that it started hurting, yes, sir.
Q Did you continue to do the work for a period of time after that until you finally gave up?
A Yes, sir.
Q When you first started with the Wood & Land Department, Mr. Dougharty, way back in 72I think you said March of 72, and through that year of 72 were you doing T.S.I. work during that year?
A Very little, very little.
Q When your back trouble started up again in May '75 did you ever go back to a chiropractor?
A No, sir.
Q Did you go then to Dr. Osborn when it started up in '75?
A Yes, sir.
Q And did Dr. Osborn then refer you to Dr. Banks?
A He referred me first towell he didn't refer me, he gave me a list of specialists, and I went to see Dr. KingsleyI made one trip there.
Q What happened there?
A He x-rayed me and examined me.
Q Do you remember when this was?
A It was somewhere in the latter part of April, or the first of May, somewhere along about that timeprobably the first of May would be closer.
Q And this was after you had first seen Dr. Osborn?
A Yes, sir.
Q How many times had you seen Dr. Osborn before you went to Dr. Kingsley?
A I don't remember, one or maybe two times.
Q What did Dr. Kingsley tell you?
A Dr. Kingsley didn't want to decidehe wanted for me to go back to work and watch me over a period of probably eight months before he made up his mind.
Q Were you working at the time you saw Dr. Kingsley?
A No, sir, I had just took off.
Q And why did you decide not to follow Dr. Kingsley's advice?
A Because I knew better than try to go back to work. I had to have something done for me, and I couldn't go back and work under those circumstances until something was done about it. My supervisor wanted me to do something, and get the best help, get the best doctor and do something about it, regardless of what it took. So instead of going back to work I was searching for somebody that could help me. I didn't feel that Dr. Kingsley would help me because I had already been watching this thingI didn't need him to watch me for eight months."
 (Tr. p. 58-61)
The defendant contends that the plaintiff cannot dispute the facts which he testified to in his deposition because his testimony was under oath and is presumed to be truthful. This is incorrect. In considering a motion for summary judgment the court does not concern itself with the weighing of conflicting evidence. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La. App. 4th Cir. 1972); Mecom v. Mobil Oil Corporation, 299 So.2d 380 (La.App. 3d Cir. 1974). The court cannot determine *778 the credibility of witnesses when considering such a motion. Lachney v. Employers Casualty Co., 281 So.2d 761 (La.App. 3d Cir. 1973); Mecom v. Mobil Oil Corporation, supra.
Even if we conclude that the evidence preponderates in favor of the defendant, still, the plaintiff is entitled to his day in court. In deciding a motion for summary judgment we do not inquire into the merits of the suit. Our consideration must be limited to a determination of whether a genuine issue of material fact does exist. Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La.App. 3d Cir. 1969); Mecon v. Mobil Oil Corporation, supra.
For the above reasons, the judgment of the District Court is reversed and the case is remanded for further proceedings. Costs of these proceedings, at trial and on appeal, are to be paid by defendant-appellee. All other costs to await final determination.
REVERSED AND REMANDED.