346 So.2d 271 (1977)
John A. VICTORIANA
v.
ORLEANS PARISH SCHOOL BOARD.
No. 8015.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1977.
*272 Wayne W. Yuspeh, Metairie, for plaintiff-appellant.
Polack, Rosenberg, Rittenberg & Endom, Franklin V. Endom, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, BOUTALL and MORAL, JJ.
SAMUEL, Judge.
Plaintiff, a maintenance employee of the defendant, appeals from a judgment rejecting his claim for total and permanent disability benefits, penalties and attorney's fees under the Louisiana Workmen's Compensation Act.
The accident in suit occurred on March 8, 1974 when he was struck on the head by a pair of pliers which fell from above, a distance of twelve feet or less. He sustained a contusion and a small abrasion at the vertex of the scalp. Following the accident, he was seen by various physicians, all of whom were of the opinion he was physically able to return to work. He was paid weekly compensation during that period.
Plaintiff's claim is based solely upon a psychiatric condition identified by his psychiatrist, Dr. Robert L. Newman, Jr., as a "psychophysiologic musculoskeletal disorder". In this court he contends: (1) he was not afforded an equal opportunity to argue because the commissioner (the matter was heard by a commissioner and judge ad hoc) refused to hear oral argument and requested briefs confined to case law and burden of proof on traumatic neurosis, with which request he complied, but that the memorandum submitted by the attorney for defendant also included argument and testimony, which plaintiff had no chance to rebut; and (2) plaintiff proved his case by a preponderance of the evidence.
We do not agree with the first contention. Appellant moved for a new trial, and at a hearing on this motion he had an opportunity to present any argument he deemed necessary. He also had the opportunity *273 in this court, by oral argument and in brief, to present his client's case in full.
Regarding the second contention, it is now our settled jurisprudence that recovery may be had in compensation cases for disability resulting from a mental condition.[1] The condition must be proven, as any other disabling injury, by a preponderance of the evidence, and it must be shown that the disability was causally connected to the work related accident.[2] In such cases the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of the condition, and the possibility of the symptoms being easily feigned; the evidence in these cases should be scrutinized carefully and every precaution taken to guard against unjustified claims.[3]
In addition, as this court said in Jennings v. Halliburton Company:[4]
". . . It is the duty of the trial judge to evaluate the testimony of all the witnesses, both lay and medical. After making such an evaluation, he may accept or reject the opinion expressed by any medical expert, depending on how impressed he is with the qualifications, credibility, and testimony of that expert. In short, the trial judge is obliged to evaluate testimony of a medical witness according to the same rules applicable to other witnesses."
In the instant case the trial judge refused to accept Dr. Newman's opinion that, based upon the history given to the doctor by the appellant, the relatively inconsequential injury resulting from the fall of the pliers was a precipitating factor in, or causally connected to, appellant's present condition as diagnosed by that doctor. In this connection we quote with approval these portions of the Reasons for Judgment:
"Dr. Newman did find the psychiatric disorder previously stated and further explained that the plaintiff had a `passive dependent' personality preexisting the accident. Based upon the history given to him by the plaintiff, the doctor's conclusions in regard to plaintiff's personality form the backdrop of the doctor's ultimate diagnosis. The doctor found that the plaintiff had a high regard for himself and turned to other family members for succor and support in meeting life's tribulations. From this style of coping with life the plaintiff came to expect the rest of humanity to render such assistance in the same style and dispatch afforded by his family. On feeling that life's realities did not coincide with plaintiff's expectations under this personality deficit, the plaintiff caused his own headaches, dizziness, etc. in an attempt to seek justification for seeking the desired succor and support.
On questioning, Dr. Newman did provide the criteria upon which he based his belief of the plaintiff's story. The criteria were: the time of commencement of symptoms, dreams, a `startle' reaction, lack of control of impulses, fear of return to the scene of the accident and adoption of a `don't care' attitude toward life.
Dr. Newman also referred to the consistency of the story upon its retelling by the plaintiff as a further buttress to its credibility.
The plaintiff did not exhibit symptoms in all of the criteria. He had no adverse dreams. He had no geographical fear. His `startle' reaction was none when first seen in August, 1974 and was only noted *274 by Dr. Newman in April, 1975 a year after the episode. Dr. Newman, based on the history given, did conclude that commencement of symptoms was fixed at the time of the fall of the pliers, that he had adopted a `don't care' attitude toward life and that he lacked impulse control. No examples were given in regard to the latter observation. The diagnosis apparently can be made regardless of failure of findings in all of the criteria.
Dr. Newman did state that the precipitating factor causing the collapse of plaintiff's ability to work was not necessarily a physical trauma but could have been some nonphysical occurrence. Dr. Newman did believe that the fall of the pliers was the precipitating factor in plaintiff's case based upon the history given.
The defense, on the other hand, showed that since the plaintiff's separation from the service in 1968 the plaintiff had been employed in a general laborer category by quite a number of different employers. It was shown that plaintiff's immediate family and other relations interceded for the plaintiff in obtaining employment. It was shown that on at least one job, employment was terminated because the plaintiff failed to go to work, preferring bowling activities instead.
It was also established that the school board job held by the plaintiff was temporary and known by him to be such. It was generally known that a lay-off was contemplated in the future of all such categorized employees.
On the day of the accident, upon reporting to the job, the plaintiff informed the crew boss that he was quitting and going to work for the Jefferson Parish School Board. The plaintiff filled in a termination form and gave it to the crew boss and left the site. He returned, however, and retrieved the form from the crew boss. He explained that this was all done in jest. The crew boss testified in no uncertain terms that the matter of termination was handled seriously and with advice by him to the plaintiff to reconsider his intended course of action. The plaintiff's return prior to the crew boss's call to the office advising of the termination gave the opportunity to plaintiff to recover the termination form.
While these facts bear no legal significance in regard to the plaintiff's status as an employee, they do however show that the plaintiff's mental condition was adverse to continuance of employment at a time prior to the fall of the pliers. The Court finds that plaintiff's subsequently recalled termination was indeed serious and not done in jest.
Also shown were other adversities which affected the plaintiff. He was evicted from his home. His wife became pregnant. The medical attention afforded to him, in his estimation, was not adequate.
With the exception of plaintiff's wife, no other family member testified on his behalf in regard to the plaintiff's mental or physical condition, or upon any efforts exerted by the plaintiff to perform work.
While Louisiana law does recognize that work related accidents may cause psychological impairment of working ability and thus become compensable in benefits under the Workmen's Compensation Act, nonetheless, the claimant bears the burden of proof proving his case. In this matter such burden has not been met and judgment should be rendered dismissing plaintiff's suit."
As it reasonably appears that appellant's condition would have developed with or without the very minor accident in suit, if indeed it did develop after the accident, we cannot say the trial judge committed error in concluding the appellant had not proved his case by a preponderance of the evidence.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Junker v. Toye Brothers Yellow Cab Company, La.App., 163 So.2d 150; Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844.
[2] Andrus v. Rimmer & Garrett, Inc., La.App., 316 So.2d 433; Thomas v. St. Patrick's Hospital, La.App., 276 So.2d 749; Muse v. Sentry Insurance Company, La.App., 269 So.2d 609.
[3] Andrus v. Rimmer & Garrett, Inc., supra, footnote 2; Messex v. Georgia-Pacific Corporation, La.App., 293 So.2d 615; George v. Lafayette Well Service. Inc., La.App., 249 So.2d 212; Boutte v. Mudd Separators, Inc., La.App., 236 So.2d 906; Jackson v. International Paper Company, Inc., La.App., 163 So.2d 362.
[4] No. 8236 of our docket, 346 So.2d 268, handed down this day.