PRICE, Judge.
In this workmen’s compensation suit the plaintiff, Carolyn Palmer, appeals the judgment of the trial court which sustained the defendant’s exception of prescription. For the reasons assigned, the judgment is affirmed.
Plaintiff was employed as a clerical worker with defendant, Carter Federal Credit Union in, March 1971. In August of 1976 plaintiff was demoted because of mistakes she made in her work. Plaintiff contends that this demotion was arbitrary and unfair and the resulting worry it caused her culminated in severe emotional and psychological trauma manifested by nervousness, headaches, and paralysis of various parts of her body. Plaintiff contends that her emotional well being continued to suffer due to harassment from co-workers and her supervisors. This job-related pressure increased to the point where plaintiff suffered what she at first thought was a “stroke” while bathing at home on January 11, 1977. Plaintiff left work early that day and went to her doctor complaining of a “numbness” along the left side of her body. After a brief hospital stay, plaintiff was advised to get complete bed rest for a couple of weeks. While recuperating plaintiff was notified by defendant on March 9 that she had been terminated because of excessive absences. Plaintiff challenged this termination through procedures implemented by her labor union and she was ultimately ordered reinstated by an arbitrator on December 23, 1977. The next work day, December 27, plaintiff experienced a paralysis of her left arm and leg while at work. Plaintiff left work and returned to her doctor. She has been unable since that time to return to work because of the numbness, weakness, paralysis, and other symptoms she continues to experience.
On September 12,1978, plaintiff filed this workmen’s compensation suit against her employer, Carter Federal Credit Union and its insurer, The Hartford Insurance Company, alleging that she suffered a debilitating and paralyzing attack while in the course of her employment on December 27, 1977. The defendants filed a peremptory exception denying that plaintiff had suffered a compensable injury and alternatively alleging that her claim had prescribed.
The trial court found that plaintiff’s disability had become manifest on January 11, *52 1977, and the symptoms experienced by plaintiff on December 27 did not constitute a new injury. Since plaintiff did not file this suit within one year of January 11, 1977, as required by La.R.S. 23:1209, the exception was sustained and plaintiff’s suit was dismissed. It is from this judgment that plaintiff appeals.
On appeal plaintiff contends the trial court erred in finding that the symptoms of paralysis experienced by her on January 11, 1977, were sufficiently manifested for purposes of determining the date of the development of her injury for prescription purposes. Plaintiff also contends that the trial court erred in finding that the paralysis experienced by her on December 27, 1977, was not a new injury.
Plaintiff was under the continuous care of Dr. Charles Armistead, psychiatrist, and Mr. Don Heacock, psychologist, from February of 1977 until trial of the exception. When Dr. Armistead first examined plaintiff on March 28, 1977, she was complaining of a numbness or weakness in her left side and his diagnosis was hysterical neurosis. The symptoms exhibited by plaintiff were apparently caused by embarrassment and humiliation she felt from being demoted in August 1976, as well as real or imagined conflicts with a fellow employee. Plaintiff believed this particular co-worker was responsible for her demotion and had singled plaintiff out for undue criticism. Plaintiff also felt that she had been harassed by co-workers and the manager of the defendant credit union. This anxiety and stress was apparently aggravated in March of 1977 when plaintiff -was terminated for excessive absenteeism. The depositions of Dr. Armistead and Mr. Heacock reveal that plaintiff continued to evidence the same hysterical symptoms from January 1977 up to and including time of trial. Although her symptoms varied in severity from a “weakness” to “numbness” to “paralysis” there was never a time when her symptoms were in remission.
The time limitations imposed on institution of suit for workmen’s compensation benefits are found in La.R.S. 23:1209.[1] These limitations generally require that the claimant bring suit within one year of the accident with the proviso that if the injury does not develop immediately after the accident, the claimant may file his suit within one year from the time the injury develops. The injury is sufficiently developed to toll prescription whenever the “disability to perform work becomes manifest either to the injured employee or his employer.” Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956). See also Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419 (La.1978); Malone-Johnson, “Workers’ Compensation Law and Practice,” 2d Ed., La. Civil Law Treatise, Vol. 14, § 384, and cases cited therein.
The following statement of the applicable law by the First Circuit is pertinent:
Our jurisprudence is clear that in cases such as this, where there is no accident or specific occurrence to which a cause can be attributed, but rather where there is a progression and recurrent manifestation of illness of disability from latent causes, which may be attributable in whole or part to work related incidents, the time of development of the injury for the purpose of determining a prescriptive date, is the date of termination of employment, more specifically, the date when the employee finally has to give in to his disability and quit work.
*53 Burns v. W. H. Patterson Construction Company, 310 So.2d 675 (La.App. 1st Cir. 1975).
We expressly do not decide whether plaintiff has sustained a work-related personal injury by accident for in any event we conclude that the symptoms exhibited by plaintiff and of which she complains had rendered her unable to perform the duties of her employment in a satisfactory manner for more than one year prior to her filing this suit.[2]
Although plaintiff contends that the paralysis she experienced on December 27, 1977, was a new and different injury from her prior symptoms, we conclude, as did the trial judge, that this was simply a further progression of the hysterical neurosis from which plaintiff had suffered at least since January 11, 1977. This conclusion finds support in the general tenor of the treating doctors’ testimony as well as certain specific passages such as this from Mr. Heacoek:
Q Did she relate to you where the attack took place?
A It took place at work. The numbness, I mean the paralysis set in at work.
Q How did she describe this to you? A She just lost the use of her arm at first. It was my recollection that it did not immediately affect the leg. The leg was numb too. But the leg was still mobile. The arm became completely numb and unmovable. Well, it was movable, but she could not move it herself in any free sense of the word.
Q Was this paralysis unexpected by you?
A Not unexpected in the sense that I realized that this type of disorder could evolve to paralysis. In my release I didn’t indicate to her; and to the employer, that paralysis could come from this disorder.
Q Do you feel any feeling as to where this paralysis, or what caused this paralysis?
A I believe the paralysis was one more evolution in this disorder history.
Dr. Armistead acknowledged that the “weakness” or “numbness” plaintiff experienced prior to December 27, 1977, was about the same as the “paralysis” complained of on December 27. Dr. Armistead described plaintiff’s disability in a letter to the defendant insurance company on February 14, 1978, as a “paresis and numbness of the left upper extremity.” That these various terms have been used interchangeably to describe the symptoms plaintiff has exhibited since January 1977 is shown from the following excerpt from Dr. Armistead’s deposition:
Q This paralysis that you have spoke of in terms of weakness, are you using those as being the same thing?
A Yes. When you say “weakness” or “paralysis” of the extremities, it is just weak.
Q Even before December of ’77, she was putting her hand in her pocket or holding it to her side. Doctor, in that situation, you called it weakness or paresis or paralysis. You are also talking about the same thing; is that right?
A Yes. The paralysis means it is paralyzed. Paresis is a partial paralysis, mild weakness, mild paresis.
Q But, she was not paralyzed in the sense, like you cannot operate with a nerve out. She was not in that sense paralyzed at any time?
*54 A No.
Plaintiff “gave in to her disability and quit work” in January of 1977. She was advised that her symptoms were work-related and that she was disabled from returning to work. She was constantly under her doctors’ care from January until she returned for two days work on December 23, 1977.
This is not a situation where the injury has become latent with a later manifestation. The preponderance of the evidence shows that plaintiff’s condition remained virtually unchanged from January of 1977 until she attempted to resume her duties in December. Dr. Armistead released plaintiff to return to work on December 23, but noted that the release “is made at her specific request and is done so in the face of the continuance of many of the symptoms of her disorder that continue at times of stress.” Mr. Heacock likewise reluctantly released plaintiff to return to work on December 23, while noting the continuance of her symptoms and even predicting that it was “possible that the symptoms of numbness and dizziness that she experiences might even esculate (sic) into temporary paralysis.”
A fair evaluation of the evidence leads to the conclusion that plaintiff was disabled when she returned to work on December 23, 1977. We concur in the trial court’s factual conclusion that plaintiff has been unable since January of 1977 to perform the duties of her employment with defendant. Since plaintiff filed this suit more than one year after the development of her injury, her suit was properly dismissed.
For the foregoing reasons, the judgment appealed is affirmed at appellant’s costs.

. La.R.S. 23:1209
In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until three years from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.

. The terms “accident,” “injury,” and “personal injuries” are specifically defined in La.R.S. 23:1021:
(1) “Accident” means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.

(6) “Injury” and “personal injuries” include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.