WILLIAMS, Judge.
Plaintiff Judice Armature Works, Inc. filed suit against defendant The Board of Commissioners of the Port of New Orleans to recover $29,995.00 for work performed on a fireboat owned by the defendant. The claim was based alternatively on breach of contract or on quantum meruit. The case was referred to a commissioner by the district court and was heard before the Honorable Charles L. Rivet, Commissioner and Judge ad hoc for Orleans Parish. A report by Commissioner Rivet was rendered on September 19,1978, recommending that the plaintiff’s suit be dismissed and was accompanied by a recommended judgment to that effect. The judgment was adopted by the trial court. Plaintiff has now filed an appeal from this decision.
On January 13, 1975, plaintiff submitted a bid proposal to perform all work necessary to repair the propulsion motor of the fireboat “DELUGE”. The boat was owned by The Board of Commissioners of The Port of New Orleans [hereinafter referred to as “Board”]. The $29,000.00 bid included all costs of material and labor. The work was to be completed within thirty-six (36) calendar days of the receipt of the motor in the shipyard.[1] On January 15, the plaintiff advised the defendant by means of a letter that due to the current copper market, the completion date of the project would be thirty-six (36) days after receipt of the wire from the mill. In another letter sent to the defendant on the same day, the plaintiff supplemented the bid by listing charges to be made for extra work if it became necessary due to unforeseen circumstances. Plaintiff also guaranteed the work against all defective materials and the workmanship of the project for one (1) year. This warranty also extended to all rewinding components.
On January 24, defendant accepted plaintiff’s proposal by submitting a purchase order in the amount of $29,000.00. Defendant agreed to the basis for the charges for unforeseen extra work, but required that no extra work would be allowed unless it were approved in writing by the defendant’s engineer.
Much of the controversy in this case centers around whether the contract required the use of all new copper wire or a combination of old and new copper wiring for the rewinding of the armature of the propulsion motor of the boat. Plaintiff has contended that the original bid intended only the use of new copper magnet wire for the rewinding. Plaintiff claims that the new magnet wire was ordered but an amount sufficient to complete the project had not been received as of February 27, 1975. At that time, plaintiff claims that Mr. Leonard Spalutto, Chief of the Maintenance Division of the Board, told the plaintiff to proceed with the work, adhering to the specifications, and that plaintiff should use the new magnet wire it had as well as any used magnet wire that was available. Plaintiff proceeded to complete the work using a combination of old and new wire. Tests were made on the rewinding of the armature after the project was completed. Because of the marginal results of these tests, a meeting was held on May 7,1975, at the request of the plaintiff. The meeting was attended by Mr. Judice, a representative of the plaintiff, and a number of representatives of the defendant. Plaintiff contends that in this meeting he guaranteed the work that he had done using both old and new wire for one (1) year, but did state that the tests were marginal. He testified that at that time the Board authorized removal of the new and used wiring and replacement thereof with all new magnet wire. It is plaintiff’s contention that these additional costs and expenses would be paid by the Board.
The court below found that the bid was silent on the type of copper wiring to be used and that new and old wiring could be used as long as the final results were within the specifications of the bid. The evidence *370 presented at trial clearly supports the trial court’s finding that the bid did not necessarily contemplate the use of all new wire. Furthermore, as the report of the Honorable Charles L. Rivet states:
“Had it been from instructions given by Mr. Spalluto on February 27, 1975, that new and used copper wire were used, as contended by plaintiff, it is then incumbent upon plaintiff, under such circumstances, to comply with paragraph 43 of the specifications, [requiring approval by defendant’s engineer in writing], by procuring approval thereof, in writing and signed by defendant’s engineer.” Commissioner’s Report at 4.
At the meeting held on May 7, Mr. Judice presented some extra work that needed to be done and these costs were approved by the Board. A discussion then centered around the tests run on the rewinding of the armature. Witnesses for the Board, testified that at the meeting the plaintiff could not warrant its rewinding work and that it wanted an extension of time so that it could obtain new wiring and rewind the armature. One of the witnesses for the Board, Mr. Frank Reed, made notes of the meeting held on May 7. These notes are consistent with the testimony of the Board’s witnesses, and were introduced into evidence at trial. Furthermore, it is clear that plaintiff knew that the tests made on the rewinding done with new and used copper wire were not only “marginal”, but also unsatisfactory. On the day before Mr. Ju-dice’s meeting with the Board, plaintiff had ordered new copper wiring. As the court below found, we find that the May 7 meeting was not held for the purpose of presenting the decision to rewind the armature to the defendant, but rather to seek an extension of time for the plaintiff because it could not warrant the job as required by the specifications and had already made the decision to redo the work.
There is further evidence to support the trial court’s conclusions. On May 13, 1975, the plaintiff sent a letter to the Board requesting additional time to complete the rewinding and also making reference to extra work (but, not the rewinding), but made no mention at that time of any expenses that were to be incurred in the rewinding of the armature. The trial court found equally significant the fact that a second rewinding resulted in a successful sea trial conducted on September 6, but it was not until November 5, 1975, that the plaintiff requested a change order to cover the invoice* which related to the cause of the second rewinding.
As the trial court found, we also find that the preponderance of evidence does not support the plaintiff’s claim that the original contract was amended verbally to authorize the second rewinding of the armature.
Plaintiff has attempted to. make an issue of the absence of Charles Drury, an engineer for the Board, who was present at the May 7 meeting, at trial. Drury was not called to be a witness at trial. The plaintiff claims that Drury’s testimony would have addressed the question of the contract’s requirement of the use of old and new wiring or all new copper wiring and questioned the results of the tests run on the armature. Because Drury was not called to testify at trial by the defendant, plaintiff contends that defendant’s unexplained failure to call him gives rise to the presumption that his testimony would be unfavorable to the defendant.
It is well settled in Louisiana law that the unexplained failure of a party to call a witness who possesses peculiar and material knowledge essential to that party’s case, when that witness is available to him, raises the presumption that the witness’s testimony would be unfavorable to that party. See Lowenburg v. Labor Pool of America, Inc., 296 So.2d 846 (La.App. 4th Cir. 1974). See also Perigoni v. McNiece, 262 So.2d 407 (La.App. 4th Cir. 1972). In the instant case, there has been no showing that Drury was in possession of any “particular” knowledge pertinent to the case or any material facts necessary for the defense. Drury was present at the meeting on May 7, along with several other witnesses, two of whom who testified at trial. Drury, therefore, was not in possession of *371 any “peculiar” knowledge with reference to that meeting. His testimony as to the meeting would have been repetitive. Furthermore, although the plaintiff had claimed that Drury’s testimony would address the type of wiring to be used as contemplated by the bid and the meaning of the results of the tests run on the rewinding, there is no evidence in the record to demonstrate that Drury could or would have testified on this matter.[2]
The trial court also held that the plaintiff could not recover under quantum meruit. The court below held:
“Plaintiff’s alternative plea for recovery, under a theory of quantum meruit is without merit. It entered into a contract to repair a propulsion motor. Tests made following the work indicated that it could not warrant its work. The job had to be redone in order to comply with the contract.”
Based upon the evidence presented below, the trial court clearly was within its discretion in refusing to award any damages to the plaintiff. The judgment below is well-reasoned and based firmly on the evidence presented at hearing. Canter v. Koehring Co., 283 So. 716 (La.1973). Accordingly, we affirm the decision of the trial court.
AFFIRMED.

. The bid provided for $150.00 per contract day in late charges if the completion date were not met.

. Even assuming that Drury’s testimony would have indicated that the original contract contemplated the use of all new copper wiring, as we have noted, supra, the plaintiff had the burden of obtaining the engineer’s consent of the change from all new copper wiring to the combination of new and used copper wiring in writing as required by the bid specifications. We also note that no evidence was introduced by the plaintiff that definitely would indicate that plaintiff’s industry standards required the use of all new copper magnet wiring in a rewinding. Mr. Drury’s anticipated testimony on this matter would have been unnecessary. See Paul v. Ford Motor Co., 392 So.2d 704 (La.App. 3d Cir. 1980).