GRISBAUM, Judge.
In this worker’s compensation suit appellants Brown & Root and Highlands Insurance Company claim the trial court erred in considering the testimony of a psychiatric expert who examined plaintiff, John Fill-wock, for the first time after the primary trial on the matter. Mr. Fillwock was in *459 jured in a work-related accident on November 28, 1979 and filed suit in the Twenty-Ninth Judicial District Court for the Parish of St. John the Baptist against his employer Brown & Root, Inc. and its worker’s compensation carrier, Highlands Insurance Co. on October 14, 1980 after Mr. Fillwock’s compensation was curtailed. Although testimony was heard and exhibits were introduced during the trial, the court left the matter open for the taking of depositions of various doctors who had been subpoenaed but who had not appeared at trial.
While working for Brown & Root, John Fillwock was struck in the head, in the area of his occiput, by an angle iron which fell from scaffolding set up inside a water tank he was painting. He received a laceration of the scalp over the parietal area and was bruised over his left shoulder and upper chest. He reported that he was dazed initially but was not struck unconscious. Immediately following the accident he was examined by a local physician who sutured his scalp laceration. The physician released Mr. Fillwock to return to work, but soon after Mr. Fillwock discontinued working due to continuing problems with headaches, tinnitus, and dizziness. Consequently, he saw a neurologist, Dr. Maria Palmer, who found that he had a mild concussion. She performed an electroencephalogram. Because she could not determine whether it was normal, she performed another electroencephalogram three months later which was normal.
Mr. Fillwock was also seen by Dr. Raul Reyes, a general surgeon with specialty training in orthopedics. He completely examined Mr. Fillwock in December 1979 and after x-rays were taken diagnosed Mr. Fill-wock as suffering from post trauma cepha-lagia, a bruise on the left shoulder, a laceration of the scalp, anxiety and tinnitus in the left ear. He advised him to see an ear, nose, and throat specialist for his tinnitus in the left ear and gave him a prescription for various medications for his pain, headaches, sleep, and “anxiety manifestations.”
In January 1980, Dr. Richard Levy a neurosurgeon, examined Mr. Fillwock and thought he had sustained a mild concussion as a result of the accident. He- felt the headaches and dizziness were related to the concussion and as such could be called post concussion symptoms. In April when he again examined Mr. Fillwock, he found that the post concussion symptoms had disappeared. In the meantime, upon request of his employer’s compensation insurer, Mr. Fillwock was examined by an otolaryngologist and a neurologist to substantiate his continued complaints of hearing loss, ringing in the ears, imbalance, and headaches. Because neither of these physicians could find an “objective” basis for his complaints, the compensation insurer stopped compensation payments in June 1980.
Upon recommendation of Dr. Palmer, Mr. Fillwock was seen by Dr. Randolph Harper in July 1980. Dr. Harper performed a number of psychological tests on Mr. Fillwock and in August 1980 diagnosed Mr. Fillwock as suffering from post traumatic neurosis. Subsequently, Mr. Fillwock was examined by Dr. Hall, a psychiatrist and dolorologist at the Mercy Hospital Pain Unit in December 1980. Dr. Hall diagnosed Mr. Fillwock as showing a “moderate reactive depressive neurosis.” In addition, Dr. Palmer, as part of her examination, thought Mr. Fillwock was suffering from post traumatic neurosis. However, after examining Mr. Fillwock in February 1981, Dr. Kenneth Ritter, a psychiatrist who testified for defendants, concluded that he did not have any psychiatric disability beyond problems caused by his desire to be compensated for his injury.
At trial Mr. Fillwock contended that as a result of the mental problems he incurred from his work-related accident, he was totally and permanently disabled. On the other hand, defendants argued that any disability sustained by Mr. Fillwock had disappeared and he was, therefore, not entitled to any additional compensation. The trial court heard testimony for plaintiff from Mr. Fillwock, Dr. Palmer, a neurologist, and Dr. Harper, a psychologist. The court also heard testimony for' defendants from Dr. Ritter, a psychiatrist, as well as Mr. Murphy, a claims adjuster for Highlands Insur- *460 anee Company. An error in the scheduling of the trial which caused problems in the taking of several depositions prompted the trial court to leave the trial open for the taking of depositions of several doctors who had been subpoenaed but who had not appeared at trial. Thus, Dr. C.B. Scrignar, a psychiatrist who was called to testify for plaintiff but who had not reviewed any medical reports nor had he any previous contact with plaintiff, first examined plaintiff for psychiatric disability on March 17, 1981 (six days after the initial hearing) and was subsequently deposed on April 2, 1981. During his deposition, defendants’ counsel objected to his testimony and subsequently filed a motion objecting to its admission into evidence. The court denied defendants’ motion and considered Dr. Scrignar’s testimony. It is this admission into evidence of Dr. Scrignar’s testimony that defendants have based their appeal.
The issues on appeal are as follows:
1) In a worker’s compensation suit in which psychiatric disability is at issue, is it admissible to introduce depositional testimony derived from a psychiatric examination conducted subsequent to the trial on the merits in open court when the case was left open for the taking of depositions?
2) If the testimony is inadmissible, is the admission of such testimony into evidence in this case reversible error?
Responding to the first issue, such a belated psychiatric examination results in unreliable evidence and should have been excluded from evidence in the instant case. In cases where psychiatric disability is claimed, our courts have recognized a need to use utmost caution and extreme care when considering psychiatric evidence. This is due to the nebulous characteristics of the condition and the possibility that symptoms could be feigned. See Thomas v. McInnis Bros. Const., Inc., 401 So.2d 522, 526 (La.App. 2nd Cir.1981); Victoriana v. Orleans Parish Sch. Bd., 346 So.2d 271, 273 (La.App. 4th Cir.1977). The court in Victoriana, 346 So.2d 271, 273 stated:
“... the evidence in these cases should be scrutinized carefully and every precaution taken to guard against unjustified claims.”
In the above-cited cases, the psychiatric evidence was derived from examinations conducted prior to the trial. Where a party seeks to introduce depositional testimony derived from psychiatric examination conducted after other psychiatric testimony was heard the need for caution is even more evident. Plaintiff had the benefit of listening to defendant’s psychiatric expert’s opinion and could have conceivably styled his responses in his later psychiatric examination to contradict the defendant’s psychiatric expert’s diagnosis.
While we find this testimony to be inadmissible, its admittance under the facts of this case is harmless error. Because this court has statutory authority under Louisiana Code of Civil Procedure Article 2164 “to render any judgment which is just, legal, and proper upon the record on appeal,” our review of the record indicates that the trial court’s finding of post traumatic neurosis is correct and that justice has been done. See Naquin v. Maryland Casualty Co., 311 So.2d 48, 52 (La.App. 3rd Cir.1975); Shows v. Williamson, 256 So.2d 688, 692 (La.App. 2nd Cir.1972). Since Mr. Fillwock claims a psychological disability, we have reviewed the testimonies of the various experts with strict scrutiny. See Davenport v. McCullough Services Baroid Division, 388 So.2d 453, 456 (La.App.2d Cir.1980); Knight v. Southeastern Chemical Corp., 344 So.2d 67, 69 (La.App. 4th Cir.1977). Apart from Dr. Scrignar’s examination, Dr. Palmer, a neurologist, Dr. Hall, a psychiatrist, and Dr. Harper, a psychologist, all found Mr. Fillwock suffering from post traumatic neurosis. We find their testimony persuasive, and, therefore, affirm the trial court’s judgment.
AFFIRMED.