440 So.2d 1377 (1983)
Glenn FAUCHEUX
v.
HOOKER CHEMICAL CORPORATION.
No. 83-CA-466.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1983.
Rehearing Denied December 19, 1983.
*1378 Paul G. Aucoin, Vacherie, for plaintiff-appellee.
Darryl J. Foster, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendant-appellant.
Before CURRAULT, GAUDIN and GRISBAUM, JJ.
CURRAULT, Judge.
Plaintiff, Glenn Faucheux, brought an action in worker's compensation for mental injuries sustained while in the course and scope of his employment with defendant, Hooker Chemical Corporation.
Plaintiff, a cell operator, was injured on or about June 29, 1979, when he was struck by high voltage electricity from a cell block. Plaintiff was taken to the emergency room at a local hospital where he was treated and sent home. He stayed at home for approximately seven days. After returning to work, he was given no duty for a period of about two weeks, at which point in time he returned to the cell block as an operator.
At this point plaintiff discovered that, as a result of the accident, he had developed fear of working in the cell block. He attempted to perform his job as an operator in the cell block for three or four days, but on July 31, 1979, discontinued working. No worker's compensation benefits were paid as a result of the accident.
This suit was filed on August 22, 1980, alleging total and permanent disability due to fear and anxiety engendered by the accident of June 29, 1979.
Defendant Hooker Chemical Corporation (Hooker) filed an exception of prescription prior to trial on the merits, which was denied by the trial court. The case proceeded to trial on December 9, 1982, at which time the plea of prescription was reurged. After taking the matter under advisement, a judgment was rendered on March 29, 1983, in which the trial court again denied the exception of prescription and, further, found plaintiff totally and permanently disabled.
From that judgment, defendant Hooker perfects this appeal.
*1379 Appellant, Hooker, presents the following issues for our consideration:
(1) Whether the trial court erred in overruling Hooker's plea of prescription; and
(2) whether the trial court erred in finding plaintiff totally and permanently disabled as a result of the June 29, 1979 accident.
Suit in this case was filed on August 22, 1980. Appellant contends that the action prescribed either (1) because the accident occurred on July 29, 1979; (2) because plaintiff's last working day was July 31, 1979; or (3) because the payroll records reflect the date of termination as August 6, 1979.
Appellee, while admitting the correctness of the date of the accident and the date he discontinued working, claims his employment was not terminated until September 15, 1979. That date under the law, he argues, is the one from which prescription began to run.
The Workermen's Compensation Act of 1975 in LSA-R.S. 23:1209 provides as follows:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of partial disability this limitation shall not take effect until three years from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
More than one year had elapsed between the accident and the date suit was filed; however, since the injury herein did not develop immediately, the issue must be resolved under the "development of the injury" rule.
In determining the date that the injury develops, the Louisiana Supreme Court stated in Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, 526 (La.1956):
"Development, as applied to a compensable injury, signifies something more than occurrence and pain. It connotes the time when disability to perform work becomes manifest either to the injured employee or his employer."
See also Mottet v. Libby-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (La.1952); Hobley v. Hartford Insurance Company, 233 So.2d 589 (La.App. 4th Cir.1970); Palmer v. Carter Federal Credit Union, 397 So.2d 50 (La.App. 2d Cir.1981); Gipson v. Dresser Industrial Valve Operations, A Division of Dresser Industries, Inc., 428 So.2d 1338 (La. App. 3d Cir.1983).
In Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419 (La.1978), the Louisiana Supreme Court further discussed the holding in Wallace as follows:
"In context, this statement in Wallace was primarily applicable to the case of the retained employee, who continues to work with symptoms which might have been held to be disabling (if litigated) but which did not become manifestly disabling to the employee until he was forced to quit his work. We held that the disability did not become manifest or `develop' until that date, because to select an earlier date `would be dealing in conjecture.' 86 So.2d 525.
"In subsequent jurisprudence applying Wallace, the intermediate courts, in overruling pleas of prescription, held that the *1380 injury or disability did not `develop' until the employee actually becomes unable to perform his former duties. This test is appropriate when, under the facts, the issue is whether the injured employee who returns to work is disabled at some conjectural time before the day when he actually is unable to continue at work due to his disability." (Citations omitted at pages 421-422.)
Thus, when the employee returns to work, but is forced to terminate his employment because of the injury, prescription begins to run from that date. Meche v. Gulf Coast Pre-Mix Trucking, Inc., 383 So.2d 77 (La.App. 3d Cir.1980); Palmer, supra; Burleigh v. Argonaut Ins. Co., 347 So.2d 13 (La.App. 3d Cir.1977); Harris v. Seaboard Fire & Marine Ins. Company, 337 So.2d 262 (La.App. 2d Cir.1976).
Appellant contends plaintiff-appellee quit work on July 31, 1979 when he gave into his anxiety and did not return to work; or, at the latest, August 6, 1979, the termination date on the payroll records. Appellee Faucheux testified, however, that although he physically stopped working for defendant corporation on or about July 31, 1979, at that time, he was asked by his supervisor, Jack Hurst, to get some type of medical report indicating that he was not able to work in the cell block. He testified that he was told that if he obtained such a report he could work in some other area of the plant. Plaintiff then went to see Dr. Phemester who had originally treated him for the electrical shock and Dr. Phemester referred him to Dr. Sidney Montz, a psychiatrist, who saw plaintiff on August 24, 1979. Plaintiff obtained a note from Dr. Montz which stated that he should not work in the cell block at Hooker, but should work in some other area of the plant. Appellee stated that he had to wait until September 15 to present this note to Jack Hurst because Mr. Hurst wasn't available until then. When he did present the note, appellee testified that Mr. Hurst indicated that the note was meaningless and Mr. Faucheux then quit his job since he felt he would not be able to work again in the cell block due to his fear of electrocution.
The evidence presented by appellant to dispute the sequence of events, as set forth by plaintiff, was the testimony of George Haas, Manager of Employee Relations for appellant. The testimony is clear that he spoke not from personal observation or knowledge, but simply from records in his possession. He stated that appellee had resigned and that the last date of employment for Hooker, according to Payroll, was August 6, 1979. Appellee argues that this is not a contradiction to his testimony, but merely reflects the end of a pay period.
In brief, appellant also argues that a note signed by Dr. Montz which was introduced into evidence without objection is evidence of the implausibility of appellee's story since the note was dated 1980. However, the testimony of Dr. Montz indicates he in fact did write such a note in August, 1979. On rebuttal, appellee explained that the document introduced was a duplicate requested for trial since the original was given to Mr. Hurst and was not available.
While the record lacks the trial judge's reasons for finding that the claim had not prescribed, the trial judge apparently believed plaintiff-appellee's version of the story and our review does not mandate a different result. Appellee apparently was forced to resign due to his anxiety in September, 1979; therefore the legal manifestation of the injury under the jurisprudence was in September, 1979. The suit filed August 22, 1980 was not prescribed.
Appellant submits secondly that the trial court was clearly wrong in finding appellee, Faucheux, totally and permanently disabled as a result of the June 29, 1979 accident. Appellee asserts contrarily that the evidence was sufficient to prove that the electrocution he suffered on July 29, 1979 caused plaintiff to develop anxiety (fear of injury) while working for Hooker which has continued to date and affects him in his present job.
*1381 Mental disabilities are compensable under the Louisiana Workmen's Compensation Law. Victoriana v. Orleans Parish School Board, 346 So.2d 271 (La.App. 4th Cir.1977); Murphy v. Employers Mutual Insurance Company of Warsaw, et al, 248 So.2d 623 (La.App. 3d Cir.1971); Peavy v. Mansfield Hardwood Lumber Company, 40 So.2d 505 (La.App. 2d Cir.1949); Lala v. American Sugar Refining Company, 38 So.2d 415 (La.App.Orl.1949).
In the early Lala case, the court stated:
"There is no doubt in our minds that nervousness, neurosis, or emotional disturbances, superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute." At page 421.
The condition, however, must be proven, as in any other disabling injury, by a preponderance of the evidence and the causal relation must be established. Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3d Cir.1975); Victoriana, supra; Knight v. Southeastern Chemical Corp., 344 So.2d 67, (La.App. 4th Cir.1977). In Victoriana, the Fourth Circuit Court aptly noted:
"In such cases the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of the condition, and the possibility of the symptoms being easily feigned; the evidence in these cases should be scrutinized carefully and every precaution taken to guard against unjustified claims." At page 273.
However, the court, in analyzing mental disability cases, must also "guard against the danger of denying recovery to a deserving plaintiff." Knight, supra; Muse v. Sentry Insurance Co., 269 So.2d 609 (La.App. 3d Cir.1972). In the Knight case, the court also went on to state at page 69 that "awards for mental afflictions are permitted where the record disclosed plaintiff to be honest, sincere and truthful." In addition, great weight should be given to the findings of the trial court in his evaluation of the credibility of plaintiff, as well as the other witnesses. Knight, supra; Canter v. Koehring, 283 So.2d 716 (La.1973).
In the case herein, appellee's allegation of an anxiety syndrome was supported by the testimony of a psychiatrist, Dr. Montz, as well as the testimony of Mr. Jim Gros, the safety manager at Colonial Sugars, his present employer. The testimony of both witnesses was uncontradicted as appellants produced no medical testimony on its own behalf.
Dr. Montz examined appellee in August, 1979, and again three months prior to trial. In his opinion, after both interviews, appellee was suffering from an anxiety reaction related to the traumatic accident. He defined the anxiety reaction and its effects as follows:
"that a person experiences feelingsanxiety means fearfulness. It cananxiety can be non-specific or free floating. That means that it is not connected to any one particular thing. Or, it can be specific and connected to one thing. What it means is that a person's respiration are (sic) the physical symptoms, a person's respiration increases, the heart beat increases, the hands become cold and clamy (sic) because of the shunking (sic) of the blood, dryness of the mouth. It can progress to becoming shaking and trembling and diminish concentration if the anxiety becomes greater." (T.T. page 13)
The doctor went on to state that while appellee's symptoms have diminished, he symptoms have diminished, he still suffers fear specifically when around machinery.
Mr. Gros testified to difficulties he has had with appellee in his present job due to appellee's fear of being injured. At one point, appellee was given a leave of absence at the end of which he was told he would be terminated if he had not resolved the problem. He stated appellee returned to the job still suffering from the anxiety, but did the work as ordered. Mr. Gros testified appellee *1382 was continuing to have problems at date of trial.
Appellant argues that the testimony shows that three other psychiatrists had examined appellee, and alleges that appellee's failure to call them as witnesses raises the presumption the testimony would have been adverse to plaintiff. Under the jurisprudence, it is well established that an adverse presumption arises upon the unexplained failure of a party to call a witness who possesses peculiar and material knowledge essential to that party's case, when that witness is available to him, but the presumption is rebuttable. Judice Armature Works, Inc. v. Board of Commissioners of the Port of New Orleans, 410 So.2d 368 (La.App. 4th Cir.1982); Beal v. New Orleans Public Service, Inc., 365 So.2d 1118 (La.App. 4th Cir.1978). However, "This presumption is not sufficient to outweigh or overcome the positive testimony of medical doctors who did testify inasmuch as a litigant is not required to produce all witnesses who might have some knowledge as to the matter in dispute." Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209, 1213 (La.App. 3d Cir.1982); Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3d Cir.1970); Theriot v. Transit Casualty Co., 265 So.2d 845 (La.App. 3d Cir.1972), writ denied, 263 La. 106, 267 So.2d 211 (La.1972). The courts have held this to be particularly pertinent where the witness is equally available to the defendant. Comeaux, supra; Rushing v. Insurance Co. of North America, 391 So.2d 864 (La.App. 3d Cir. 1980); Crandall v. Scott, 350 So.2d 922 (La. App. 4th Cir.1977).
In this case, both a qualified psychiatrist as well as lay testimony supported appellee's claim of mental disability. Their uncontradicted testimony was sufficient to rebut the adverse presumption alleged by appellant. Thus, in our opinion, the trial court did not abuse its discretion in finding appellee is suffering from a traumatic anxiety syndrome resulting from the accident. However, appellant's allegation that the trial court erred in finding appellee totally and permanently disabled does have merit.
LSA-R.S. 23:1221(2) states:
"For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of the injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percentum of wages during the period of such disability."
The statutory provision has been interpreted jurisprudentially to provide that a worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Lattin v. HICA Corporation, 395 So.2d 690 (La.1981); Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980). However, it is a further rule of law in Louisiana that substantial pain cases must also be analyzed within the framework of the Odd Lot Doctrine adopted by the Louisiana Supreme Court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La. 1980); See Bazile v. Pellerin Milnor Corp., 433 So.2d 1058 (La.App. 5th Cir.1983); Field v. Winn Dixie Louisiana, Inc., 427 So.2d 616 (La.App. 5th Cir.1983); Lattin v. HICA Corporation, supra; Wilson v. Ebasco Services, Inc., supra; Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Dusang v. Henry C. Beck Builders, Inc., supra; Augustine v. Courtney Const. Co. of Alexandria, Inc., et al, 405 So.2d 579 (La.App. 3d Cir.1981).
The Louisiana Supreme Court, in Lattin v. HICA Corporation, supra, stated that:
"Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, *1383 that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.
"The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., supra." At pages 693-694.
Thus, if a worker cannot perform the same work that he did before his injury since it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled. LSA-R.S. 23:1221. Field v. Winn Dixie Louisiana, Inc., supra; Bazile v. Pellerin Milnor Corp., supra; Martin v. Orleans Parish School Board, 427 So.2d 83 (La.App. 4th Cir.1983); Dusang, supra.
As in the Dusang case, appellee herein has worked steadily since the accident in substantial pain. As in Dusang and Bazile, plaintiff's present wages exceed those earned while in the employ of appellant Hooker. Little evidence was introduced here to show appellee's injury diminishes his ability to compete in the labor market. On the contrary, the medical testimony specifically restricted his fear of reinjury to working with or around machinery.
The evidence does not indicate other forms of gainful employment are unavailable to appellee. Thus, on the evidence before the court, it is our opinion appellee is properly classified as partially and permanently disabled. In that respect, R.S. 23:1221(3) provides:
"For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds percentum of the difference between the wages the employee was earning at the time of the injury and any lessor wages which the injured employee actually earns any week thereafter in any gainful occupation for wages...."
In the recent First Circuit case, Kirkley v. DSI Transports, Inc., 416 So.2d 584 (La. App. 1st Cir.1982), the court awarded permanent, partial disability benefits to a truck driver who returned to his former employment at a higher rate of pay than before. The court found him to be in substantial pain and said:
"For this reason, we hold that plaintiff is partially disabled, under La.R.S. 23:1221(3).... Should the pain become so overwhelming that plaintiff can no *1384 longer endure driving a truck, or should pain and impairment hinder plaintiff's job performance, causing DSI to dismiss him, then plaintiff will be protected from the loss of his income by his partial disabled status. See Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367, 372 (La.1980)." At page 589. See also Bazile, supra.

Accordingly we affirm, but amend the judgment to provide benefits to Faucheux for partial and permanent disability under LSA-R.S. 23:1221(3) and for worker's compensation benefits to be paid for the period August 6, 1979 to October 8, 1979 (the months plaintiff-appellee was unemployed), payable weekly during the period of disability, but not beyond a maximum of four hundred fifty weeks, at the rate of sixty-six and two-thirds percentum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns or earned in any week, together with legal interest on each delinquent weekly payment from date of each delinquency until paid, and all medical costs and expenses; subject to credit for weekly payments made and medical expenses paid. Penalties and attorney's fees are denied. Costs of this appeal are to be apportioned between the parties.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.