497 So.2d 758 (1986)
Willie DOMINICK, Plaintiff-Appellee,
v.
CNA INSURANCE COMPANY, et al., Defendants-Appellants.
No. 85-1240.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Rehearing Denied December 9, 1986.
Writ Denied February 6, 1987.
*759 Voorhies and Labbe, John Wolf, III, Lafayette, for defendants-appellants.
Donald Mayeux, Guillory, McGee and Mayeux, Eunice, for plaintiff-appellee.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
Willie Dominick brought this worker's compensation suit under the former compensation law against his employer, Samuel Porter Home Builders and their compensation insurer, CNA Insurance Company, seeking total and permanent disability benefits and statutory penalties and attorney's fees. The trial court determined that the claimant suffered from a disabling mental condition causally connected to a work-related accident, and found the plaintiff totally disabled. No statutory penalties or attorney's fees were awarded. The defendants perfected this suspensive appeal.
The sole issue on appeal is whether the trial court erred in determining the plaintiff to be totally disabled. We affirm.
The plaintiff was employed by Samuel Porter Home Builders as a carpenter's helper. On January 14, 1983, he was injured when a co-worker fell from a ladder and either the worker or the ladder landed across plaintiff's right shoulder. The accident resulted in a non-displaced fracture at the C-2 level. The parties stipulated that Dominick was injured in the course and scope of his employment. Plaintiff received weekly compensation benefits of $133.00, until benefits were terminated on March 19, 1984. He received $7,999.80 in compensation benefits during this period and $10,530.22 in medical benefits. He brought suit claiming total and permanent disability.
At the trial on the merits the plaintiff and his wife testified, but all other testimony was submitted by deposition.
The expert medical evidence relied on by the plaintiff consisted of the depositions of Dr. Emile Riley and Dr. Philip Landry.
Dr. Riley, a general surgeon, initially examined plaintiff on March 14, 1984. Plaintiff was complaining of severe pain in his right shoulder which allegedly caused a fainting episode. The examination revealed tenderness over the right brachial plexas area; severe wasting of the right pectoral muscle; and a winged scapula. These findings were consistent with the history of injury given by the plaintiff. A winged scapula could result from trauma to the muscle or a nerve. On March 30, 1984, atrophy of the right pectoral muscle and winging of the scapula were again noted and the plaintiff was prescribed physical therapy. On May 3, 1984, the doctor noted muscle spasms and parascapular pain. An appointment was made for plaintiff to see a neurologist. On plaintiff's seventh visit (October 4, 1984) the doctor noted pain and tenderness of the left parascapula and the plaintiff discussed symptoms of insomnia and anorexia. The doctor felt the pain was caused by fibromyositis or myofascitis. He opined that the plaintiff was probably suffering from nerve injury with some aberration of the musculature functions and from an inflammatory *760 type process secondary to trauma. The doctor did not think that plaintiff could perform heavy manual labor at the time of plaintiff's last examination.
Dr. Philip Landry, a psychiatrist, testified that he examined the plaintiff on January 14, 1985. The examination consisted of an hour-long interview with the plaintiff and a conversation with the plaintiff's brother. The plaintiff related that he had suffered from memory lapses, impotence at times, irritability and symptoms of anxiety since the accident. The plaintiff's general physical appearance had also deteriorated since the accident. The doctor observed that the plaintiff appeared depressed and withdrawn. The plaintiff and his brother related to the doctor that the plaintiff had no significant depression prior to the accident. The patient related that he has been psychologically disturbed since the accident. Since the accident plaintiff has suffered from aches and pains that were not able to be diagnosed. The doctor opined that these pains were emotional in nature caused by a traumatic experience, the accident. He diagnosed the plaintiff as suffering from a reactive depression resulting from the accident. The doctor was fairly certain that his diagnosis was accurate and felt that the plaintiff had been truthful with him. He stated that plaintiff's symptoms of mood disorder, bad headaches, his fainting episodes, his aches and pains, his impotence and probably his scoliosis were all caused by his depression and were psychiatric in nature. He opined that plaintiff's depressive illness which occurred in reaction to the accident would take approximately six months to a year of intensive psychiatric treatment to cure. The doctor felt plaintiff was disabled from working at the time of the examination.
The defendants introduced into evidence the depositions of four doctors and a physical therapist.
The deposition of Dr. Lionel Mayer, an orthopedic surgeon, revealed that he originally examined the plaintiff on October 19, 1983, at the request of plaintiff's attorney. The plaintiff complained of barely being able to walk, of fainting periods, dizzy spells, and of pain in his back, neck and ribcage. The plaintiff had multiple subjective complaints but the doctor only found one objective finding: a moderate tilt to the left side. He believed that the plaintiff had developed the habit of tilting to the left side, and that this habit was either psychological or emotional. Dr. Mayer's examination revealed no orthopaedic physical impairment. However, he felt the plaintiff should consider a psychological evaluation. His records revealed no evidence of a winged scapula, and no muscle atrophy in the upper extremities. He opined that from an orthopaedic standpoint, plaintiff could return to work.
Dr. James Rivet, a neurologist, testified that he initially examined plaintiff at the emergency room on April 7, 1983. He had been referred by Dr. Bertrand due to a questionable fracture at the C-2 level. The X rays did reveal a non-displaced fracture. The plaintiff was prescribed a collar. On May 2, 1983, plaintiff complained of pain in both shoulders. He was given a neurological examination which was normal. The fracture had healed and plaintiff was advised to discontinue the collar. On May 23, 1983, plaintiff complained of numbness in his left arm. The examination did reveal a muscle spasm in his back which was consistent with the fracture. A cervical myelogram was performed on May 25; the results were normal. Nerve conduction tests and an EMG were run; the results were also normal. The doctor found no neurological condition which would prevent the plaintiff from returning to work.
Dr. Norman Anseman, Jr., a psychiatrist, examined the plaintiff on May 28, 1983. The patient showed signs of functional overlay (a response to testing that does not fit an organic problem). He opined that the functional overlay may be secondary to depression or hysteria, or an attempt by the plaintiff to deceive for monetary gain. The doctor stated there was no way for him to know. The doctor found no organic problems wrong with the patient and felt he should go back to work. He found no evidence of winged scapula or atrophy of the muscles. He did state that atrophy to *761 the pectoralis muscle could be caused by disuse or nerve injury. He would not recommend that the plaintiff see a psychiatrist because in his opinion psychiatrists do not help. He felt that a patient should "work through" his mental disturbances.
The deposition of Dr. David Rees reveals that during his examination of the plaintiff he felt that the plaintiff was exaggerating his complaints and that he found a little winging of the scapula. The doctor opined that plaintiff was fabricating his illness and his depression, although he conceded that the plaintiff may have convinced himself that he really has all these problems.
The deposition of Nadya Busin, an assistant physical therapist at Charity Hospital in New Orleans, said that plaintiff was referred to her by Tulane Neurology with a diagnosis of lumbar back pain. She felt that he was exaggerating his pain because he was able to do his exercises without pain.
The lay testimony consisted of the testimony at trial of the plaintiff and his wife.
Willie Dominick's pertinent testimony was that he continues to have pain in his lower back and across his shoulder area. He feels as though his whole body is twisting to the right. His pain in his shoulders feels like little needles sticking him. His right side is higher than his left side and it feels like he is carrying something heavy on his right side all the time. He never had any of these symptoms or problems prior to the accident. He has not had any other accidents. He does not feel able to return to work due to his pain and aches.
Dora Dominick corroborated her husband's complaints of pain and aches. She also stated that he complains of numerous headaches. She testified that prior to the accident she never noticed his right shoulder being higher than his left. Before the accident his back was straight and he never complained of pain or injury.
The evidence also contained the medical records of the plaintiff. Additionally, the trial court had the opportunity to visually observe the plaintiff.
Based on the evidence and his observations, the trial court concluded that plaintiff's problems began with the compensable physical injury that occurred on January 14, 1983, and that his injury physically disabled plaintiff until approximately October 30, 1984 (the date of plaintiff's last visit to Dr. Riley). The trial court also concluded that as a result of the accident, plaintiff began to mentally deteriorate also and that his mental condition totally prevented plaintiff from engaging in any type of work for wages. Based on these findings the trial court awarded plaintiff compensation benefits.
The defendants argue that the trial court erred in these findings of fact. We disagree for the following reasons.
In discussing the compensability of mental disabilities under the former compensation law the court in Jordan v. Southern Natural Gas Co., 455 So.2d 1217 (La.App. 2nd Cir.1984) stated:
"[m]ental disabilities have been held to be compensable under the act when certain circumstances are present. See Faucheux v. Hooker Chemical Corp., 440 So.2d 1377 (La.App. 5th Cir.1983) and the cases cited therein. This condition must be proven as in any other disabling injury, by a preponderance of the evidence. Such a condition must not only be shown to exist but also it must be shown that the condition was causally related to a work related accident. Faucheux v. Hooker Chemical Corp., supra; Andrus v. Rimmer and Garrett, Inc., 316 So.2d 433 (La.App. 3d Cir.1975). Therefore, it is clear under the present state of the law that when a plaintiff develops a disabling anxiety syndrome, traumatic neurosis, or other mental disorder as a result of a work related physical injury, he can recover compensation benefits even if he has recovered physically from the injury. The rationale behind such recovery is that nervousness, neurosis, or emotional disturbances, superinduced by the worker having suffered an injury, can be just as devastating to the ability to return to work as *762 physical or anatomical injuries. Faucheux v. Hooker Chemical Corp., supra. However, when a claimant seeks benefits for a neurotic or mental disability such as a traumatic neurosis, the court must proceed with extreme caution and exercise extreme care in view of the nebulous characteristics of such a condition and the possibility of the symptoms being easily feigned. The evidence in cases of this nature should be scrutinized carefully and every precaution taken to protect employers and insurers against unjustified claims because of alleged mental affliction. Andrus v. Rimmer & Garrett, Inc., supra, and cases cited therein."
A claimant in a worker's compensation suit must establish by a preponderance of the evidence three elements of proof in order to recover disability benefits: (1) a job-related personal injury; (2) disability (whether physical or mental); and (3) a causal relationship between the disability and the injury sustained in the job-related accident. See Kilgore v. Western Casualty & Surety Company, 462 So.2d 1366 (La.App. 3rd Cir.1985), writ denied 466 So.2d 470 (La.1985). In every case the totality of the evidence, medical and lay, must be examined by the court in making its determination of whether to grant a disability award. Kilgore, supra. Generally, the trial court's factual findings are entitled to great weight and will not be disturbed on appeal absent manifest error. Kilgore, supra.
In the present case the defendants stipulated that plaintiff received a job-related personal injury. The trial court determined that the plaintiff proved the other elements and awarded disability benefits. The defendants contend, however, that the manifest error standard of review is not applicable to this appeal. They argue that since all the expert medical evidence was based on deposition testimony, the trial court was in no better position to evaluate credibility than this court.
It is clear that the manifest error rule is not applicable when the trial court reaches a factual finding based entirely on evidence presented through depositions and medical records. See Vial v. Armstrong, 479 So.2d 583 (La.App. 1st Cir.1985), writs denied, 481 So.2d 634 (La.1986) and 481 So.2d 635 (La.1986); and Wise v. Louisiana Department of Transportation & Development, 470 So.2d 954 (La.App. 3rd Cir.1985), writ denied 475 So.2d 1108 (La.1985). However, in the present case the trial court's factual determination of disability was not based entirely on deposition testimony, but also on the trial testimony of plaintiff and his wife. The credibility of the plaintiff was an important factor in deciding the case.
In Kilgore v. Western Casualty & Surety Company, supra, only the plaintiff testified at trial, all other testimony being submitted to the court by deposition. The trial court concluded the plaintiff sustained disabling injuries in a work-related accident. In reviewing the trial court's determination of disability, this court correctly applied the manifest error standard of review. The factual finding of disability was dependent not only upon the expert medical testimony but also upon the credibility of the plaintiff whose testimony was presented at trial.
For these reasons we are bound by and shall apply the manifest error standard of review.
We find that the trial court's factual determination of disability and the causal connection between the disability and accident were not manifestly erroneous. It is clear from the trial judge's reasons for judgment that he carefully scrutinized the evidence before reaching these determinations. The trial court found that plaintiff was physically disabled from returning to work until approximately October 30, 1984, and mentally disabled from returning to work thereafter. The medical and lay evidence support these conclusions.
The trial court afforded greater weight to the testimony of Dr. Riley since he was a treating physician. Dr. Riley treated plaintiff from March 17, 1984, until October 1984. During these visits he noted that plaintiff was suffering from muscle *763 spasms, pain in his shoulder and scapula, atrophy of the pectoralis muscle, and a winged scapula. He opined that the pain was being caused by fibromyositis or myofascitis. The doctor felt the plaintiff was unable to return to work during his treatment which lasted until the end of October 1984. Based on this evidence we cannot say the trial court was manifestly erroneous in its determination that plaintiff was physically disabled until approximately October 30, 1984.
The medical evidence presented at trial supporting the view that plaintiff had disabling mental problems included the deposition of Dr. Philip Landry, a psychiatrist, who examined the plaintiff and concluded that he was suffering from a reactive depression resulting from the accident. The doctor found the plaintiff believable and felt that most of his symptoms including physical pain, mood disorders, and intolerance for stress, were due to his depression.
Dr. Mayer, an orthopaedic surgeon, found nothing physically wrong with the plaintiff but noted that he should consider psychological evaluation. Dr. Norman Anseman noted that the patient showed signs of functional overlay which may be secondary to depression, hysteria or an attempt to deceive for monetary gain.
Dr. David Rees, the other psychiatrist to testify, stated that he felt plaintiff was exaggerating and fabricating his complaints. However, he also admitted that there was a possibility that plaintiff had really led himself to believe he had all those problems.
Based on the medical evidence, plaintiff was either truly disabled as a result of the reactive depression or he was fabricating his complaint. This determination uniquely involved the credibility of the plaintiff. The trial court after hearing the testimony of plaintiff and his wife as to his complaints and visually observing the plaintiff found him to be credible. Great weight is afforded the findings of credibility of the plaintiff in a worker's compensation proceeding. In the present case we find no manifest error in the trial court's determination that the plaintiff was disabled due to the reactive depression.
We also find no manifest error in the trial court's determination that plaintiffs depression was causally connected to the job-related accident. The evidence was clear that plaintiff did not have the symptoms of the depression prior to the accident, but that the symptoms manifested themselves subsequent to the injury. Dr. Landry's testimony was that the depression was probably triggered by the accident.
For these reasons the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.