451 So.2d 621 (1984)
Reginald PELT
v.
GUARDSMARK, INC., et al.
No. 83-CA-844.
Court of Appeal of Louisiana, Fifth Circuit.
May 14, 1984.
*622 Gregory D. Frost, Lee, Greenfield & Frost, Baton Rouge, for plaintiff-appellant.
Stephen R. Wilson, Keogh, Cox & Wilson, Ltd., Baton Rouge, Wayne J. Fontana, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendant-appellee.
Before CHEHARDY, BOWES and DUFRESNE, JJ.
DUFRESNE, Judge.
This appeal comes before us from a judgment of the district court on a consolidated action in tort and workmen's compensation. The plaintiff, Reginald Pelt, filed a petition for damages against Alice Davis and her employer, Guardsmark, Inc. and a suit for workmen's compensation benefits against his employer, Pullman-Kellogg Corporation. The district court, after a trial on the merits, rendered judgment in favor of defendants, and against the plaintiff based on the plea of prescription. The plaintiff has perfected this appeal and assigned the following specifications of error.
That the trial court erred in finding that plaintiff's claims in tort and workman's *623 compensation had prescribed, for the following reasons:
1. The trial court erroneously required plaintiff to show, by a preponderance of the evidence, that his claim had not prescribed.
2. The trial court was manifestly wrong in finding that plaintiff's claim had prescribed, in that it ignored all of the objective evidence on point, and chose to rely on the statements of defendants' employees.
3. The trial court erred in not finding that the St. Charles Parish Clerk of Court had possession of the petition on February 4, 1981, and, therefore, that this suit was filed timely.
4. The trial court failed to recognize that plaintiff's workmen's compensation claim had not prescribed under the "development of the injury" rule.
On appeal, we shall segregate and resolve the two causes of action: (1) tort, and (2) workmen's compensation.

(1) Tort Action
This case has its genesis sometime in early February, 1980. The plaintiff, Reginald Pelt, was employed by Pullman-Kellogg Corporation as a pipefitter at the Shell Refinery in Norco, Louisiana. The plaintiff arrived at the plant and reported for duty at approximately 6:20 A.M. Shortly thereafter, he began walking into the plant. At the same time, defendant, Alice Davis, who was on duty at the plant and working under the employ of the defendant, Guardsmark, Inc., was seated in her van facing away from the plaintiff. After completing the conversation she was having with a fellow employee outside of the van, she proceeded to make a U-turn in order to head towards the gate through which the plaintiff had just entered. At about the time she completed the U-turn, her vehicle struck the plaintiff.
At trial, Mrs. Davis admitted that she was in a hurry, had been talking to her passengers, and did not see the plaintiff until her vehicle struck him.
At the time of the accident, plaintiff was not aware that he had been injured. In fact, he repeatedly told Mrs. Davis that he was unhurt. However, some two to three days following the accident, he began to experience headaches and cervical pain. He reported to the Pullman-Kellogg first aid station, complaining of those symptoms. Thereafter, on February 26, 1980, he first went to see Dr. John Fraiche, and began a series of visits and treatments which lasted over nine months.
Plaintiff worked a full day on the date of the accident and on the following day. From that time on, plaintiff had increasing difficulty with his neck and with headaches, but continued to work for Pullman-Kellogg Corporation until April 10, 1980. At that time, he began to work at BASF Wyandotte, both because he thought that the work would be easier (i.e., less aggravating to his condition) and because it was closer to his home in Baton Rouge. Prior to his leaving Pullman-Kellogg, he had missed some 97 hours of work as a result of his injuries.
The plaintiff worked for BASF Wyandotte until May 29, 1980, at which time he was laid off due to his inability to do certain job related activities. In the six to seven weeks at that employment, he had missed some 65 hours as a result of his injuries.
In the next three months, plaintiff was seen not only by Dr. Fraiche, but also by Dr. John Clifford and Dr. John Faser. His condition improved somewhat and, on October 6, 1980, he returned to work.
On February 5, 1981, suit was filed herein against Alice Davis, Pullman-Kellogg Corporation, and Guardsmark, Inc. In his petition, the plaintiff alleged that the accident occurred on February 11, 1980. The defendants responded to plaintiff's suit with exceptions of prescription, contending that the accident actually happened on February 4, 1980. On July 1, 1981, a hearing was held on those exceptions, but the matter was held open for the taking of the deposition of defendant, Mrs. Davis. On September 10, 1981, the trial court rendered *624 judgment denying the exceptions of prescription as to both the tort and workman's compensation suit.
On June 28, 1983, trial on the merits was had herein. Following that trial, on September 12, 1983, the trial court rendered judgment, dismissing plaintiff's claims, both in tort and in workman's compensation. On September 29, 1983, a motion for a new trial was denied and on November 7, 1983, the trial court granted the instant appeal.
The trial judge, in his reasons for judgment stated the following:
"This court stated its position clearly That it was necessary that plaintiff prove his case by a preponderance of the evidence on the trial on the merits. This he has failed to do.
I find that the burden of proof as explained by this court was not met by plaintiff relative to any tort and/or workmen's compensation claim. All of the facts point out that prescription has run on the claim, which is to be filed within one (1) year."
We agree with the trial court with respect to the issue of prescription regarding the tort suit against Alice Davis and Guardsmark, Inc. The record reveals that the alleged cause of action occurred more than one year prior to the commencement of this action. After carefully reviewing evidence in the record, there is sufficient legal certainty to logically conclude that the cause of action in tort arose at least several days before the disputed 11th of February, 1980. In fact, the overwhelming evidence points toward the date of February 4, 1980.
Examination of the record in the instant matter reveals that the only evidence that the accident occurred on February 11, 1980, (rather than February 4, 1980) is the testimony of plaintiff himself, either coming directly from plaintiff, or appearing in documents which he himself prepared or gave information for preparing. Plaintiff argues that of the seven people to testify on the issue of prescription, that John Fraiche, was the only "truly impartial person" to testify. The deposition of Dr. John Fraiche appears twice in the record. A simple review of this deposition reveals the obvious fact which almost begs the question. The only information which Dr. Fraiche had about the date of the accident is that which was told to him by the plaintiff, making any testimony by Dr. Fraiche a simple repetition of what he had been told at some point in time by the plaintiff himself.
The only evidence that the accident in question occurred on the 11th rather than the 4th of February is the testimony of the plaintiff. We must consider the evidence to the contrary. Mr. John Copeland testified that the accident occurred on February 4th, on a Monday morning in 1980. He later admitted that he had no independent recollection that it was exactly on the 4th but that it was on the Monday following the first weekend in February. He also confirmed that he was in the van along with a Mr. Kars, a Mr. Bass and the driver, Ms. Alice Davis. Mr. Donald Kars testified that the accident definitely happened "the first weekend in February". The uniform testimony of Messrs. Copeland and Kars and Ms. Davis was that Mr. John Bass was also in the van on the date of the accident. Mary Jane Falcon, a secretary with Guardsmark, whose job involved keeping payroll and time records for Guardsmark employees, testified that Mr. John Bass was getting off of work at 5:30 a.m. on the 4th of February (as was Mr. Copeland and Mr. Kars). The records further reveal that Mr. Bass did not get off or arrive at work early in the morning on the 11th of February one week later, but in fact he did not start to work until 6:00 p.m. in the evening of February 11th. The testimony of Ms. Alice Davis further confirmed that this particular combination of individuals, Mr. Copeland, Mr. Bass and Mr. Kars, never again after February 4, 1980, rode in her van together.
As pointed out by the trial judge in his opinion: "All of the facts point out that prescription has run on the claim ..." or obviously the trial judge was not impressed with the testimony of the plaintiff on the *625 issue of the date of the accident. The overwhelming evidence points to an occurrence date of February 4, 1980. The trial judge felt that all facts pointed to this date.
The standard of review by this court of such a finding is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong. This court should determine whether the district court judgment is clearly wrong considering all the evidence, Canter v. Koehring Company, 283 So.2d 716 (La.1973) and it's progeny.
Furthermore, where there exists a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact made by the trial judge who had an opportunity to hear and see the witnesses testify, should not be disturbed upon appeal in absence of manifest error, Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Plaintiff has further urged that the prescription argument of the defendant has no merit since the St. Charles Parish Clerk of Court had possession of his petition on February 4, 1981, and that his suit was filed timely. We must agree with the trial judge's conclusion that this argument is totally without merit. The record reveals that the petition was filed with the Clerk of Court's office on February 5, 1981. Article 253 of the La.Code of Civil Procedure requires that "all pleadings or documents to be filed in an action or proceeding instituted or pending in a court, and all exhibits introduced in evidence, shall be delivered to the Clerk of the Court for such purpose." Actual delivery must be made to the Clerk of Court and no provision is made for deposit with the U.S. Post Office. Plaintiff further argues that the Clerk of Court acted improperly, since he picks up his mail only once a day, around 8:30 in the morning. The plaintiff has not produced any positive evidence that his petition arrived at the Post Office on February 4, 1981.
The plaintiff or anyone who has pleadings or documents to file with the Clerk of Court has a responsibility to deliver said files to the Clerk's office. It is not the obligation of the Clerk of Court to seek out and file documents. As announced in Squatrito v. Barnett, 338 So.2d 975 (La. App. 4th Cir.1976) at 977:
"A party obliged to file a pleading within a time limitation must insure actual delivery, since it is the time when the Clerk receives actual delivery which determines whether that pleading has been timely filed." (Emphasis ours)
After reviewing the totality of the evidence, we find no error in the trial court's conclusion and judgment. The evidence is sufficient to clearly support the finding that the plaintiff's tort suit is prescribed. The accident happened on February 4, 1980, and this lawsuit was filed on February 5, 1981, which is one day late.

(2) Workmen's Compensation
Addressing the issue of prescription in a workmen's compensation LSA-R.S. 23:1209 is germane. This statute reads as follows:
"In case of personal injury including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been *626 begun within two years from the date of the accident" (Emphasis ours)
Utilizing the "Development of the Injury" Rule, the plaintiff's suit for workmen's compensation is timely, consequently we reverse the trial court on this issue.
In Faucheux v. Hooker Chemical Corporation, 440 So.2d 1377, (La.App. 5th Cir. 1983) this court recently faced a situation which was conceptually similar to the one at issue herein. That is, in Faucheux, the plaintiff was injured on June 29, 1979. As a result of his injury, he missed some seven days of work, then returned but was given no duty. Some two weeks later, he returned to his previous job. Thereafter, he realized that he had developed an emotional problem as a result of the injury, and discontinued working on July 31, 1979. On September 15, 1979, his employment was formally terminated. Suit was filed on August 22, 1980. In addressing the issue of prescription, Judge Currault noted as follows at page 1379:
"More than one year had elapsed between the accident and the date the suit was filed; however, since the injury herein did not develop immediately, the issue must be resolved under the `development of the injury' rule.
In determining the date that the injury develops, the Louisiana Supreme Court stated in Wallace v. Remington Rand, Inc. [229 La. 651,] 86 So.2d 522, 526 (1956): `Development as applied to a compensation injury, signifies something more than occurrence and pain. It connotes the time when disability to perform work becomes manifest either to the injured employee or his employer.' ... In Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419 (La.1978), the Louisiana Supreme Court further discussed the holding in Wallace as follows:
`In context, this statement in Wallace was primarily applicable to the case of the retained employee, who continues to work with symptoms which might have been held to be disabling (if litigated) but which did not become manifestly disabling to the employee until he was forced to quit his work. We held that disability did not become manifest or "develop" until that date, because to select an earlier date "would be dealing in conjecture", 86 So.2d 525.
`In subsequent jurisprudence applying Wallace, the intermediate courts, in overruling pleas of prescription, held that the injury or disability did not "develop" until the employee actually becomes unable to perform his former duties. This test is appropriate when, under the facts, the issue is whether the injured employee who returns to work is disabled at some conjectural time before the day when he actually is unable to continue at work due to his disability.'
Thus, when the employee returns to work, but is forced to terminate his employment because of the injury, prescription begins to run from that date." 440 So.2d, at 1379 through 1380 (citations omitted)
In the present case, the accident took place on February 4, 1980, but the plaintiff was not seriously affected and did not seek first aid for two or three days. He continued to work for Pullman-Kellogg Corporation until April 1980, and a subsequent employer until May 29, 1980.
This suit was filed on February 5, 1981, which is only one year and one day from the date of the accident. The record reveals that the plaintiff did not even complain of his injury for two or three days. By application of R.S. 23:1209 and the development of injury rule as contained in Faucheux v. Hooker Chemical Corporation, supra and the cases cited therein the plaintiff's workmen's compensation claim had not prescribed when suit was filed on February 5, 1981.
Having concluded that the plaintiff's claim is not prescribed, we must now review the record to determine whether he is entitled to workman's compensation benefits. Mr. Pelt was involved in an accident on the premises of his employer and was in the course and scope of his employment at the time. Plaintiff is entitled to benefits for the period February 4, 1980, through *627 July 30, 1980. During the period from February 4, 1980, to May 29, 1980, the plaintiff continued to work, but was partially disabled and as a result of this disability is entitled to recover the sum of $1,252.55, as per the formula contained in R.S. 23:1221(3). From May 29, 1980, through July 30, 1980, (9 weeks) when he was instructed by Dr. John Fraiche not to work at all, he would be entitled to the maximum allowable benefits for temporary total disability of $163.00 per week or $1,467.00. Since Dr. Fraiche advised the plaintiff that he could return to work as July 30, 1980, his benefits would cease as of this time.
Further, plaintiff is entitled to recover medical expenses incurred herein as a result of his injury totalling $1,122.44.
Judgment is hereby rendered in favor of plaintiff and against defendant, Pullman-Kellogg Corporation to provide workmen's compensation benefits to be paid for partial disability under R.S. 23:1221(3) from February 4, 1980, to May 29, 1980, for a total of $1,252.55, and for temporary total disability benefits from May 29, 1980, to July 30, 1980, for a total of $1,467.00, and medical costs and expenses of $1,122.44, together with legal interest from the date the above amounts were due until paid. Penalties and attorney's fees are denied. Costs of this appeal are to be paid by defendant, Pullman-Kellogg Corporation.
Accordingly, the judgment of the trial court dismissing the plaintiff's tort action is affirmed. The judgment of the trial court dismissing the plaintiff's workman's compensation suit is reversed and judgment is rendered in favor of plaintiff, and against Pullman-Kellogg Corporation for workmen's compensation benefits.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.