992 So.2d 1078 (2008)
Peggie HUNTER
v.
MORTON'S SEAFOOD RESTAURANT & CATERING and XYZ Insurance Company.
No. 2007 CA 2396.
Court of Appeal of Louisiana, First Circuit.
July 3, 2008.
*1079 John J. Finckbeiner, Jr., New Orleans, Louisiana, for Plaintiff/Appellant, Peggie Hunter.
Eric J. Halverson, Jr., Metairie, Louisiana, for Defendants/Appellees, Wahoo, Inc. d/b/a Morton's Seafood Restaurant & Catering and Great Central Insurance Company a/k/a Argonaut Great Central.
Before CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, and McCLENDON, HUGHES, WELCH, JJ.
McCLENDON, J.
The plaintiff appeals from the trial court judgment that granted defendant's peremptory exception raising the objection of prescription and dismissed her action with prejudice. For the reasons that follow, we reverse the judgment and remand the matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
On March 10, 2006, Peggie Hunter fell and was injured as she was leaving Morton's Seafood Restaurant & Catering (Morton's Seafood) in Madisonville, Louisiana. On Thursday, March 8, 2007, Ms. Hunter filed by facsimile (fax) transmission to the Twenty-Second Judicial District Court a petition for damages naming Morton's Seafood as a defendant.[1] On Friday, March 9, 2007, the clerk of court transmitted a receipt of transmission that the suit was received on March 8, 2007. Thereafter, the original petition sent through the United States postal service was stamped as "filed" with the clerk's office on March 16, 2007.
On May 3, 2007, Morton's Seafood filed a peremptory exception raising the objection of prescription, asserting that Ms. Hunter's action had prescribed because it was not filed until March 16, 2007, more than one year after the date of the accident. On October 12, 2007, following a hearing, the trial court granted the exception and dismissed Ms. Hunter's suit with prejudice. Ms. Hunter now appeals.

DISCUSSION
Under LSA-C.C. art. 3492, delictual actions are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. When an exception of prescription is filed, ordinarily the burden of proof is on the party pleading prescription. However, when the face of the petition reveals that *1080 the plaintiff's claim is prescribed, the burden shifts to the plaintiff to show the action has not prescribed. Easrin v. Entergy Corp., 03-1030, p. 5 (La.2/6/04), 865 So.2d 49, 54.
Louisiana Revised Statutes 13:850 specifically applies to fax filing of pleadings and provides, in pertinent part:
A. Any paper in a civil action may be filed with the court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time that the facsimile transmission is received and a receipt of transmission has been transmitted to the sender by the clerk of court. The facsimile when filed has the same force and effect as the original.
B. Within five days, exclusive of legal holidays, after the clerk of court has received the transmission, the party filing the document shall forward the following to the clerk:
(1) The original signed document.
(2) The applicable filing fee, if any.
(3) A transmission fee of five dollars.
C. If the party fails to comply with the requirements of Subsection B, the facsimile filing shall have no force or effect. (Emphasis added.)
Ms. Hunter contends that the trial court erred in finding that her action prescribed. Ms. Hunter asserts that pursuant to LSA-R.S. 13:850 she timely forwarded the original petition within five days of instituting her suit by facsimile transmission. However, Morton's Seafood contends that because the original petition was not received by the clerk of court until March 16, 2007, the sixth day[2] following the fax filing, it was "filed" outside of the five-day requirement of LSA-R.S. 13:850. Thus, although it is undisputed that the original petition was mailed on March 15, 2007,[3] the fifth day following receipt of the facsimile transmission, Morton's Seafood maintains that the filing was untimely under current jurisprudence.
Specifically, Morton's Seafood refers to this court's decision in Bryant v. Milligan, 00-2524 (La.App. 1 Cir. 6/6/01), 808 So.2d 660, in support of this circuit's rejection of the mailbox rule in applying LSA-R.S. 13:850. In Bryant, we held that because the original petition for damages was not received by the clerk's office until more than five days, exclusive of legal holidays, after the facsimile transmission, the plaintiffs' fax filing could not be considered to have interrupted prescription pursuant to LSA-R.S. 13:850. Bryant, 00-2524 at pp. 4-5, 808 So.2d at 663. In reaching that conclusion, and citing a line of previous jurisprudence, we stated:
Based on the applicable statutes and caselaw, as well as a full reading of LSA-R.S. 13:850, we do not believe the legislature intended to allow litigants to skirt the strict confines of the prescription articles by transmitting a facsimile of a petition to a clerk's office within the prescriptive period, but then not have a deadline within which to file the original signed and verified document, along with the applicable filing fees and statutorily-imposed transmission fee. While *1081 the legislature could have crafted the statute more precisely, it is clear upon reading LSA-R.S. 13:850 that a litigant can only avail himself of the convenience of filing a pleading by facsimile transmission if the litigant ensures that the original document is received by the clerk's office, along with all applicable fees, within five days, exclusive of legal holidays, of the date of the facsimile transmission. Any other interpretation discharges the legal and logical duty imposed on the party seeking to assert a claim to ensure that it is properly placed before a court of law. See Granger v. Jefferson Parish Department of Recreation, 00-1811 (La.App. 5 Cir. 3/14/01), 783 So.2d 471; Antoine v. McDonald's Restaurant, 98-1736 (La.App. 3 Cir. 5/5/99), 734 So.2d 1257; Brown v. American Nat. Property & Casualty Co., 98-2292 (La.App. 4 Cir. 10/28/98), 720 So.2d 1278; Martin v. Kroger, 29,915 (La.App. 2 Cir. 10/29/97), 702 So.2d 347, writ denied, 98-0033 (La.3/13/98), 712 So.2d 881; Inferno Associates, Inc. v. Division of Administration, Office of State Purchasing, 94-0675 (La.App. 1 Cir. 3/3/95), 652 So.2d 577.
Bryant, 00-2524 at p. 4, 808 So.2d at 663. To understand how this court reached said conclusion, a review of the history of the cases interpreting LSA-R.S. 13:850 and cited above in Bryant is warranted.
In the earlier first circuit decision of Inferno Associates, Inc. v. Division of Administration, Office of State Purchasing, 94-0675 (La.App. 1 Cir. 3/3/95), 652 So.2d 577, this court recognized that according to LSA-R.S. 13:850 "[a]s long as the original signed document, and the applicable filing and transmission fees are forwarded to the clerk of court within five days after the clerk has received the transmission, the facsimile when filed has the same force and effect as the original." Inferno, 94-0675 at p. 5, 652 So.2d at 580 (Emphasis added.). However, in a footnote, the panel deciding the matter stated that LSA-R.S. 13:850 was "inartfully drafted," but because the "original petition was received by the clerk" within the five-day requirement, it did not have to "interpret the meaning of the ambiguous term `forward'." Inferno, 94-0675 at p. 5, n. 4, 652 So.2d at 580, n. 4.
Thereafter, the second, fourth, and third circuits decided Martin v. Kroger, Co., 29,915 (La.App. 2 Cir. 10/29/97), 702 So.2d 347, writ denied, 98-0033 (La.3/13/98), 712 So.2d 881, Brown v. American Nat. Property & Casualty Co., 98-2292 (La.App. 4 Cir. 10/28/98), 720 So.2d 1278, and Antoine v. McDonald's Restaurant, 98-1736 (La. App. 3 Cir. 5/5/99), 734 So.2d 1257, respectively, which cases are cited in the Bryant decision above. However, in each of these decisions the original petition or the required fees were not forwarded within five days of the facsimile transmission of the petition. Thus, these cases are factually distinguishable from the present matter. Nonetheless, a review of pertinent language and reasoning in the cases is helpful to our analysis herein.
In Martin, the second circuit focused on LSA-C.C.P. art. 253 and, citing Pelt v. Guardsmark, Inc., 451 So.2d 621 (La.App. 5 Cir.1984), stated:
All pleadings or documents to be filed in an action or proceeding instituted or pending in a court shall be delivered to the clerk of court for such purpose. LSA-C.C.P. Art. 253. A party obliged to file a pleading within a time limitation must ensure actual delivery, since it is the time when the clerk receives actual delivery which determines whether that pleading has been timely filed. Pelt v. Guardsmark, Inc., 451 So.2d 621 (La. App. 5th Cir.1984).
*1082 Martin, 29,915 at pp. 3-4, 702 So.2d at 349. However, the Pelt case was decided before the enactment of LSA-R.S. 13:850. Although Martin acknowledged such in its decision, the court went on to state that "the statute makes the effectiveness of such a filing conditional upon the subsequent delivery of the original pleading to the clerk within five days of the transmission date," citing the first circuit decision in Inferno as authority. Martin, 29,915 at p. 4, 702 So.2d at 349 (Emphasis added.). Thereafter, the fourth circuit in Brown concluded that pursuant to LSA-R.S. 13:850(B), the signed original petition and applicable fees "were due in the clerk's office" within the five-day period, Brown, 98-2292 at p. 4, 720 So.2d at 1279, and in the Antoine case, the third circuit cited Martin for the proposition that delivery to the clerk within five days of the fax transmission date was required. Antoine, 98-1736 at pp. 7-8, 734 So.2d at 1261. Nonetheless, we note that in Martin, Brown, and Antoine, it was clear that the necessary filings were neither forwarded nor received within the five-day requirement of the statute.
In contrast, in the Granger case, the plaintiff alleged that the necessary documents had been timely forwarded and submitted the affidavit of his counsel's paralegal, who stated that she mailed the petition and pauper status application two days after the petition was faxed to the clerk's office. Plaintiff argued that as long as the original petition, filing fee, and transmission fee were sent within five days of the facsimile transmission, the duty imposed upon him by LSA-R.S. 13:850 was met, and that it was irrelevant when the original documents and funds were actually received by the clerk's office. The fifth circuit disagreed. Citing LSA-C.C.P. art. 253 and the Pelt, Martin, Antoine, and Brown decisions, the court concluded:
Based on the applicable statutes and caselaw, as well as a full reading of La. R.S. 13:850, it is apparent that in enacting R.S. 13:850, the legislature did not intend to allow litigants to skirt the strict confines of the prescription articles by transmitting a facsimile of a petition to a clerk's office within the prescriptive period, but then not have a deadline within which to file the original signed and verified document, along with the applicable filing fees and statutorily-imposed transmission fee. While the legislature could have chosen more precise language, it is clear upon reading La. R.S. 13:850 that a litigant can only avail himself of the convenience of filing a pleading by facsimile transmission if the litigant ensures that the original document is received by the clerk's office, along with all applicable fees, within five days, exclusive of legal holidays. Any other interpretation discharges the legal and logical duty imposed on the party seeking to assert a claim to ensure that it is properly placed before a court of law.
Granger, 00-1811 at pp. 4-5, 783 So.2d at 473 (Footnote omitted.)(Emphasis in original.).
The above cases set the stage for Bryant, decided thereafter. As set forth previously, the trial court in Bryant denied the defendants' exception raising the objection of prescription, finding that the original petition had been forwarded within the five-day period mandated by LSA-R.S. 13:850. The first circuit reversed, citing the above cases, and followed Granger without any additional analysis, concluding that because the original petition was not received by the clerk's office until more than five days after the fax transmission, the plaintiffs' claims had *1083 prescribed.[4] After careful consideration, we can only conclude that this court's interpretation and application of LSA-R.S. 13:850 were incorrect.
The Civil Code establishes only two sources of law in Louisiana: legislation and custom. LSA-C.C. art. 1. Legislation is the solemn expression of the legislative will. LSA-C.C. art. 2. Therefore, the interpretation of a law primarily involves the search for the legislature's intent Sultana Corporation v. Jewelers Mutual Insurance Company, 03-0360, p. 3 (La.12/3/03), 860 So.2d 1112, 1115. The starting point in ascertaining that legislative intent is the language of the statute itself. Sultana, 03-0360 at p. 4, 860 So.2d at 1116. In examining that language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning. LSA-C.C. art. 11; LSA-R.S. 1:3.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the legislature's intent. LSA-C.C. art. 9; LSA-R.S. 1:4. When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. Finally, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 05-2548, p. 20 (La.10/1/07), 986 So.2d 1,17.
In light of these principles, we find LSA-R.S. 13:850 clear and unambiguous. Section B of the statute plainly says "forward." "Forward" has been defined in Black's Law Dictionary as "[t]o send forward; to send toward the place of destination; to transmit." Black's Law Dictionary, p. 590 (5th ed.1979). We do not find the legislature's choice of the term "forward" to be ambiguous. To forward something, simply means to send it. Further, this interpretation does not lead to absurd consequences. When the Pelt case was decided in 1984, there was no statutory provision for fax filings. The only means by which to file a pleading was by actual delivery to the clerk's office in person or by mail. Therefore, at that time filing by mail or in person were the only possible means of delivery in accordance with LSA-C.C.P. art. 253.
However, when the legislature enacted LSA-R.S. 13:850 in 1991, it gave litigants another means of delivery, i.e., by facsimile transmission. We find no conflict or inconsistency with Article 253, because pursuant to LSA-R.S. 13:850, the actual delivery to a court when a pleading is faxed is the filing by facsimile transmission. The effectiveness of such a filing is conditional upon forwarding the original pleading plus the applicable filing and transmission fees within five days after the clerk of court has received the transmission, with the failure to do so voiding the previous filing and rendering it without force and effect. *1084 That is all that is required. Thus, contrary to the language in the Granger case, which was adopted by this circuit, the legislature in no way intended to allow "litigants to skirt the strict confines of the prescription articles by transmitting a facsimile of a petition to a clerk's office within the prescriptive period, but then not have a deadline within which to file the original signed and verified document, along with the applicable filing fees and statutorily-imposed transmission fee." Granger, 00-1811 at p. 4, 783 So.2d at 473. The deadline imposed and intended by the legislature is the five-day forwarding requirement.
A plaintiffs burden of proof is to show that the original petition was "forwarded," i.e., "sent" or "transmitted," within the five-day period. The court in Granger was actually presented with the issue, but its analysis was misguided in what appears instead to be a question of proof since the only proof that the original petition and fees were sent within the five-day requirement was the affidavit of plaintiffs counsel's paralegal that she mailed it two days after the fax transmission. However, in the case sub judice, we have in the record the original envelope with the United States postmark of March 15, 2007, objective and undisputed evidence that the original petition was "forwarded" within the required five-day period. Further, the document was actually received by the clerk's office through the mail on March 16, 2007, one day after the postmarked mailing. The flawed analysis of Granger was simply adopted in Bryant with little discussion. We believe this was error. Thus, we conclude that the term "forward" means just that, i.e., "send" or "transmit," and that the mailbox rule is applicable herein.
Having determined that the original petition was forwarded within five days of the receipt of the fax transmission by the clerk of court, and there being no issue of nonpayment of fees, the trial court erred in failing to give said fax filing force and effect. Therefore, because Ms. Hunter's petition was filed as of March 8, 2007, it was timely filed pursuant to LSA-C.C. art. 3492 and LSA-R.S. 13:850. The trial court erred in granting Morton Seafood's peremptory exception raising the objection of prescription, and the October 12, 2007 judgment is hereby reversed. All First Circuit Court of Appeal jurisprudence not consistent with the ruling in this case is overruled.

CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining Morton's Seafood's peremptory exception raising the objection of prescription is hereby reversed. The matter is hereby remanded for further proceedings consistent with the opinions expressed herein. All costs of this appeal are assessed to Morton's Seafood.
REVERSED AND REMANDED.
DOWNING, J., dissents.
GAIDRY, J., dissents and assigns reasons.
McDONALD, J., dissents for the reasons assigned by Judge GAIDRY.
PETTIGREW, J., dissents and assigns reasons.
KUHN, J., dissents for the reasons assigned by Judge PETTIGREW.
GUIDRY, J., concurs in the result.
WELCH, J., concurs in result.
GAIDRY, J., dissenting.
I respectfully dissent from the well-written majority opinion. Every appellate *1085 circuit of this state that has addressed this issue has rejected the mail box rule when interpreting the five-day deadline for fax filing imposed by LSA-R.S. 13:850. It is my belief that the use of the term "forward" in the context of this statute is ambiguous and that interpreting it as synonymous with "send" leads to absurd consequences.
As noted by my learned colleague, Judge John T. Pettigrew, in his dissent herein, Bryant v. Milligan, 00-2524 (La. App. 1 Cir. 6/6/01), 808 So.2d 660, is controlling and should be followed until the issue is otherwise clarified by the legislature.
PETTIGREW, J., dissenting.
I must respectfully dissent from the majority.
I am of the opinion that Bryant v. Milligan, 00-2524 (La.App. 1 Cir. 6/6/01), 808 So.2d 660, is controlling and the proper analysis.
Further, the majority's position will open a Pandora's Box of litigation regarding the filing date of documents.
NOTES
[1] The defendant's proper name is Wahoo, Inc., d/b/a Morton's Seafood Restaurant & Catering.
[2] We note that March 8, 2007, was a Thursday. Because Saturday, March 10, 2007, and Sunday, March 11, 2007, were legal holidays, they are not included in counting the five days within which the original document and applicable fees were to be sent. See LSA-R.S. 1:55(A)(1) and LSA-C.C.P. art. 5059.
[3] The record contains the original envelope reflecting the postmark of the United States Post Office with the date of March 15, 2007.
[4] We note one other first circuit decision decided pursuant to LSA-R.S. 13:850, on February 8, 2008. Dunn v. City of Baton Rouge, 07-1169 (La.App. 1 Cir. 2/8/08), 984 So.2d 129, 131. The court in Dunn referred to the Bryant decision and stated that, as mandated by the statute, the original signed document and applicable fees "must be filed with the clerk of court, along with a filing fee, if applicable, and a five dollar transmission fee, within five days after the clerk has received the fax-filed transmission." However, the decision in Dunn is distinguishable from the Bryant case in that in the Dunn case, the petition delivered to the clerk differed from the copy that was filed by fax, although it was received by the clerk's office within five days.